## MOLLIE SPARKS, Appellant, v. CLAY.

Division One, December 22, 1904.

1. **PARTITION: Final Judgment: Unborn Heirs.** The laws governing the partition of real estate in force between 1854 and 1858 are reviewed, and it is *held,* that, thereunder, a judgment finding the interests of the parties, decreeing partition and appointing commissioners to make partition in kind, was a final judgment, and hence the subsequent birth of an heir, after an order of sale but before order of distribution of proceeds, did not, on the theory that no service was had upon that heir, render that final judgment *coram non judice.*

2. ———: ———: ———: **Distribution.** Those statutes did not authorize the court to make the distribution of the proceeds of the sale, but required that to be done by the sheriff in accordance with the previous decree of the court, and gave the court no control over the same except to allow the sheriff such costs and expenses as were legal and reasonable. Hence, the order of distribution was not the final judgment in partition.

3. ———: ———: ———: **Heirs Not in Esse.** The life tenant in a partition suit is the legal representative of heirs not *in esse,* as to the service of process.

4. ———: ———: ———: **Proceeds.** The purchaser at a partition sale is not required to follow the proceeds of the sale and see that they are properly applied.

5. ———: ———: ———: ———: **Life Tenant: Remainderman.** The owner of land conveyed a one-fourth interest therein to an unmarried daughter for life with remainder therein to her heirs.

She joined as plaintiff in a partition suit, and after judgment setting out the interests of all the coparceners and decreeing that she had a lifetime interest in the one-fourth with the remainder to the heirs of her body and decreeing partition, she was married, the property was sold, and before an order of distribution was made the plaintiff was born and her father was appointed her guardian, and the record does not show whether the sheriff paid over the whole of the proceeds of the fourth part to plaintiff's mother, without any regard to the plaintiff's interest in remainder, or whether he turned over any part of the proceeds to plaintiff's father as her guardian. *Held*, that whether the entire proceeds were paid to plaintiff's mother or to her father, was a matter between the plaintiff, her mother, father and the sheriff, and did not affect the jurisdiction of the court over the subject-matter in suit, and did not make the judgment void, or invalidate the title of the purchaser of the fourth part, for at that time, under the then statutes, the court had no control over the distribution of the proceeds.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,* Judge.

Affirmed.

*Geo. Robertson* for appellant.

(1) (a) The judgment in partition in the case of Clark et al. v. Muldrow et al. is void for the reason that the statute of partition (ch. 119, R. S. 1855), was not complied with. Secs. 1, 3, 5, 11, 14, 35, 39, 41, 51 and 52. (b) Because plaintiff, after coming into existence, was not made a party to the proceedings. Sec. 11, ch. 119, R. S. 1855; Story's Eq. Plead. (Redfield's Ed.), sec. 147. (2) Neither the judgment, order of sale, order of distribution nor order of approval provided for the substitution of the fund arising from the sale of the land for the land, and for that reason is void. Sec. 41, ch. 119, R. S. 1855; Monarque v. Monarque, 80 N. Y. 320; Mead v. Mitchell, 17 N. Y. 210; Brevort v. Brevort, 70 N. Y. 136; Freeman on Coten. & Par. (2 Ed.), sec. 428; Black on Judgments, sec. 661; Cheeseman v. Thorne, 1 Edw. Ch. 629; Noble v. Cromwell,

26 Barb. 480. The Partition Act of 1855 of this State very closely resembles that of the State of New York— see citations from statute in New York cases cited in Mead v. Mitchell, where the judgment substituted the fund for the land. (3) The order of distribution made at the May term, 1858, after the birth of the plaintiff, is the final judgment. Murray v. Yates, 73 Mo. 13; Aull v. Day, 133 Mo. 337. Plaintiff's interest became a vested one at her birth and this being before the sheriff's deed was made or the report of sale approved, the sheriff's deed would not convey her interest. Pococke v. Pococke, 2 Mo. App. 118; Hutton v. Williams, 35 Ala. 503; Carroll v. Powell, 48 Ala. 303; Evans v. Wilder, 7 Mo. 359; Evans v. Ashley, 8 Mo. 177; Davis v. Green, 102 Mo. 181. (4) The law controlling the judgment at the time it was entered will control as to plaintiff's rights in the lands. Olcott v. Board, 16 Wall. 678, 55 C. L. J. 25.

*R. D. Rodgers* and *W. W. Fry* for respondent.

(1) The partition proceedings in the case of Clark et al. v. Muldrow et al. were regular and as the law directed. R. S. 1855, ch. 119. (2) (a) It was not necessary that plaintiff after her birth should have been made a party to said partition proceeding, for upon the report of the commissioners that the land could not be divided, as directed, without great prejudice to the owners thereof, the court, as authorized by section 28, chapter 119, Revised Statutes 1855, ordered and adjudged that the land be sold. This order and judgment directing a sale of the land in partition was the final judgment in the case, and said partition suit, so far as adjudging the rights of parties interested in the land, ended with that judgment, and it was the final judgment under the law as it stood at that time. Hinds v. Stephens, 45 Mo. 209; Durham v. Darby, Admr., 34 Mo. 447; Murray v. Yates, 73 Mo. 13; Buller v. Linzee,

100 Mo. 95. (b) But if this court should hold that the judgment ordering the sale of the land was not the final judgment in the case, we suggest that the plaintiff was legally represented and before the court in said cause. Section 38 of said chapter of Revised Statutes 1855, required the sheriff, after completing the sale, to make a report thereof to the court, including therein the expenses incurred in the case. This the sheriff did on May 7, 1858, and thereupon, to-wit, May 7, 1858, the court appointed A. A. Sparks guardian of plaintiff, as provided by section 52, Revised Statutes 1855. As Sparks for all the purposes of that partition suit had the same power, under said partition act, that a general guardian of plaintiff would have had, he had authority to enter his appearance for plaintiff in said cause, even though process may never have been issued for or served on her. Payne v. Masek, 114 Mo. 631; Hitt v. Thompson, 18 Mo. 461; Shaw v. Gregorie, 35 Mo. 342, 41 Mo. 407. (c) Aside from the appearance for plaintiff by her guardian, she had her day in court. She was not born until after the sale of the land. The rights and interests of all persons, whether *in esse* or not *in esse,* in the proceeds of the land had been determined and adjudicated and she divested of her contingent interest in the land. Reinders v. Koppelmann, 68 Mo. 482; Preston v. Brant, 96 Mo. 552; Sikemeier v. Galvin, 124 Mo. 367. (3) Opposing counsel make the point that the court made no provision for the substitution of the fund arising from the sale of the land, and that the sale in partition was therefore void as to plaintiff. This contention is based on section 41 of said partition act. It will be seen from reading said section that the court, in such cases, was not authorized to direct an investment of any part of the money arising from the sale of the land, until after the land was sold. The court was not advised as to the sale in partition until the sheriff made his report, as required by section 39 of said partition act; which report of sale

was not made until May 7, 1858, and until this date the court could not make any direction with reference to any fund, and not then except as to the interests of parties who were at the time absent from the State, without any legal representative in the State, or as to parties not known or named in the partition proceedings. We regard the proceedings in that case as in strict compliance with the law, but if this court should think otherwise, the most that can be said, in plaintiff's behalf, as regards the judgment and order of sale in partition, is as to whether there should have been a commutation of the life estate of Sarah I. Sparks. But that is a question which would go, not to the validity of the judgment, nor to the jurisdiction or power of the court to render the judgment and make the order of sale, but simply as to whether there was error in said judgment and order. And no rule is better settled than that if the court has the jurisdiction of a case the mere fact that it may commit error in the judgment rendered does not vitiate that judgment, and that such a judgment is not subject to a collateral attack. Talbot v. Roe, 171 Mo. 421.

MARSHALL, J.—This is an action in ejectment to recover ten and thirteen-hundreths acres of land in the city of Mexico, Audrain county, it being a part of the west half of the northwest quarter of the northeast quarter of section 35, township 51, range 9. The petition is in the usual form, and the ouster is laid as of the —— day of February, 1902. The answer is a general denial, with a plea of the Statute of Limitations.

At the close of the whole case the court directed a verdict for the defendant, and from the judgment thereon the plaintiff appealed.

The facts in judgment are these:

George F. Muldrow is the common source of title, he having acquired the land by a patent from the United States government on August 30, 1838. By a quitclaim

deed dated October 19, 1853, George F. Muldrow and wife conveyed certain land, of which the land in controversy is a part, to his two sons, John G. Muldrow and Charles A. Muldrow, and to his two daughters, Sarah I. Muldrow (plaintiff's mother) and Mary L. Clark, *nee* Muldrow. The conveyance to the sons was of an undivided one-fourth to each in fee. The conveyance to the daughters was "for their use and benefit during their natural lives and in fee simple to their heirs."

On October 25, 1853, Mary L. Clark and her husband, and Sarah I. Muldrow, instituted in the circuit court of Audrain county a suit for the partition of the land so conveyed, against George F. Muldrow and his wife, Charles A. Muldrow, and George H. and Mary Bell Clark, the minor children of Mary L. Clark. George F. Muldrow and his wife entered their appearance, Charles A. Muldrow was a minor and was served with process. The judgment dated October 25, 1854, recites that the court found that the defendants had been duly served with process issued from the court, and the circuit court appointed guardians *ad litem* for each of them, John P. Clark being appointed guardian for his minor children, and the guardians filed answers for the minors, and the court found the interest of the parties in the land to be as follows: to Margaret Muldrow (wife of George F. Muldrow) and to Charles A. Muldrow each one undivided one-fourth interest in fee, and to Sarah I. Muldrow and Mary L. Clark each one undivided one-fourth in the land, "during their natural lives and after their death, in fee simple to their heirs," and decreed partition accordingly, and appointed commissioners to make partition in conformity therewith, and to make report.

On April 20, 1855, the commissioners filed their report that the land could not be divided in kind and thereupon on April 23, 1855, the court ordered that the sheriff sell the land on twelve months' credit. This

order was not executed, but on October 23, 1855, the court entered a renewed order of sale to be executed at the next term of the court. The sheriff executed this order and sold the land on April 29, 1856, and John P. Clark, the husband of the plaintiff Mary L. Clark, became the purchaser of the land in controversy here. The sheriff made no return upon the order of sale until May 7, 1858.

At some date between the renewed order of sale and the report of sale, not clearly shown by the record, but stated to be in 1856, Sarah I. Muldrow married A. A. Sparks, and on July 11, 1857, the plaintiff was born, and she is the only child and heir of Sarah. I. Muldrow.

On June 12, 1858, the court ordered the then late sheriff, who had sold the land while sheriff, to make distribution of the proceeds of sale as follows: "To Mary L. Clark and her heirs, and to Sarah I. Sparks, formerly Sarah I. Muldrow, and her heirs, each one-fourth part thereof for their use and benefit during their natural lives, and at their death in fee simple to the heirs of their body, and to the said Margaret Muldrow, and Charles A. Muldrow each the one-fourth part thereof in fee simple." The order then directed that the costs of the case be paid by the parties according to their respective interests, and then concludes as follows: "And afterwards, to-wit, on the same day John P. Clark produced his bond as guardian of the heirs of Mary L. Clark which bond was examined by the court and approved and ordered to be entered of record. And also on the same day came Aquilla A. Sparks and produced his bond as guardian of the heirs of Sarah I. Sparks, which was by the court examined, approved, and ordered of record." The bond was shown to be among the files of the papers, and filed for record on May 7, 1858. It recites the appointment of A. A. Sparks by the circuit court, as guardian for Mollie Eliza Sparks, infant under twenty-one years and only child of Sarah I. Sparks.

The record in this case does not show how the sheriff executed the order of distribution, but concludes with a statement that the record in the partition case contained the following order: "November 3, 1858. This day the report filed herein by William Hendrix, sheriff, is by the court approved and this cause is stricken from the docket."

Sarah I. Sparks, the life tenant, and the plaintiff's mother, died on February 14, 1902, and this action was brought to and tried at the June term, 1902. The plaintiff claims one undivided one-fourth interest in the land as remainderman in fee under the deed of her grandfather, George F. Muldrow, dated October 19, 1853. The defendant claims by mesne conveyances from John P. Clark, the purchaser at the partition sale.

As stated, the circuit court directed a verdict for the defendant and the plaintiff appealed.

The position of the plaintiff is thus stated by her counsel:

"Plaintiff's contention is that these partition proceedings as to her are utterly void. Not only because of the failure to comply with the law for procedure in partition suits, but having been born during the progress of the case and before the land was disposed of to John P. Clark, any sale had, under said proceedings, could carry only her mother's life estate and did not affect her interest in the remainder."

I.

The first contention of the plaintiff is that the judgment in partition is void, because the plaintiff came into existence before it was rendered, and was not made a party to the proceedings nor served with process, and therefore the appointment of a guardian for her was *coram non judice.*

This contention is predicated upon the theory that the order of distribution of June 12, 1858, was the final judgment in the partition suit.

The judgment finding the interests of the parties, decreeing partition and appointing commissioners to divide the land was entered on October 25, 1854. The order of sale to the sheriff was dated October 23, 1855, and was executed by the sheriff on April 29, 1856. Plaintiff's mother was then unmarried. She married sometime in 1856, and plaintiff was born July 11, 1857. The order of distribution was made on June 12, 1858. When the judgment was entered on October 25, 1854, and when the land was sold on April 29, 1856, the plaintiff was not *in esse,* and, therefore, could not have been made a party defendant or served with process. She came into existence on July 11, 1857, the order of distribution was made on June 12, 1858, and the sheriff's deed to the land was executed on May 7, 1858, and filed for record on June 10, 1858. The plaintiff contends that the order of distribution of June 12, 1858, was the final judgment, while the defendant contends that the judgment entered on October 25, 1854, was the final judgment, and that there was no authority in the court under the law in force at that time to make the order of distribution, but that the sheriff was charged with the power and duty to make distribution according to the provisions of the judgment of October 25, 1854.

An analysis of the statute in force at that time is necessary to determine these contentions.

When the judgment of October 25, 1854, was entered, the act of February 21, 1845, was in force (R. S. 1845, p. 764). That was the revision of 1845. That act was made up of the various acts in force prior thereto, together with various new provisions, and the result was an act the provisions of which were not harmonious. For the purposes of this case it is only necessary to refer specially to the following inconsistencies: sections 56, 57, 58, 59 and 60, of chapter 128 of the Revised Statutes of 1845, are substantially a copy of the act of February 23, 1839 (Laws 1838-9, p. 39). This was

an act supplementary to the "Dower" act of 1835. The substance of this act was that after the administration upon the estate of the deceased showed that there was enough personal property to pay the debts, the widow or the adult children, might petition the circuit court to partition the land; that the court should appoint commissioners to set apart the widow's dower, and to partition the balance of the land among the heirs, and the report of the commissioners should be subject to review by the court; but that if the commissioners reported that the land was not susceptible of division in kind, the case should be dismissed. Thus it will be observed that the court was given no power in the first place to find the land was not susceptible of division in kind, nor was it given any power in any event to order the land to be sold, and the sheriff had nothing to do with the sale or partition of the land.

But at the same session of the General Assembly the act of January 7, 1839, relating to "Partition" was passed (Laws 1838-9, p. 88). This act provides substantially that if the commissioners found that only a part of the land was susceptible of division in kind, they should divide that only, and report to the court, and that the court should order the sheriff to sell the part that could not be divided in kind and to divide the proceeds among the parties to whom no land had been allotted. This act also provided for a trial and settlement by the court of all adverse claims to the proceeds of sale.

The act of February 15, 1841 (Laws 1840-41, p. 108), provides that if the commissioners report that the land, or any part, is not susceptible of division in kind, the court shall order it sold, and made further provision as to the duties of the sheriff in making such partition sales, and gave him power to take notes or bonds for the purchase-money, "and to pay over the same according to the order of the court," and to make deeds to the purchasers, and made the sheriff liable on his

bond for the proceeds of the sale, and gave him power to close up the matter even after his term had expired, unless ordered by the court to turn the business over to his successor, and then provided that, "the sheriff shall file, in the clerk's office, an accurate statement of all moneys received, and all costs and expenses paid or incurred in the transaction of the business, *and the court shall allow such as are legal and reasonable."*

It will be observed that the sheriff is required to pay out the proceeds of the sale "according to the order of the court," and to make report, and the court is to allow such costs and expenses "as are legal and reasonable."

It will be further observed that the act of January 7, 1839, provided that if any person claimed any of the proceeds of sale, that portion should be "paid" (this was changed in sec. 42, p. 772, R. S. 1845, to read "shall be *retained* by the sheriff") to the sheriff and be by him held subject to the further order of the court, and that the claimant should file suit in the circuit court against the other claimants therefor.

These two acts are substantially sections 28 to 39 of the Revised Statutes of 1845.

Section 39 of the Revised Statutes of 1845 embodies the provisions of the act of 1841, which requires the sheriff to make a report of the sale and expenses and directs the court to allow such of the costs and expenses as are legal and reasonable. In the revision of 1845, section 40 provides how the proceeds of sale shall be divided, which is as follows: "Sec. 40. The proceeds of every such sale, after deducting the costs and expenses of the proceedings, shall be divided among the parties whose rights and interests shall have been sold, in proportion to their respective rights in the premises, and shall be paid to them, their guardians or legal representatives, *by the sheriff."*

Thus it appears that under the law the sheriff was to distribute the proceeds of sale to the parties, without

any order of the court, and that the court had nothing to do with the matter after its first judgment except to allow such costs and expenses as were legal and rea-sonable.

Section 66 of the Revised Statutes of 1845, for the first time gave to the court the right to determine in the first instance that the land was not susceptible of division in kind, and to order a sale of the land without appointment of commissioners, but this did not change the other provisions of the law already pointed out, as to the duty of the sheriff and the power of the court after the sale.

Section 41 of the Revised Statutes of 1845, provided that if any of the parties whose interests were sold were absent from the State or without a legal representative in this State, or were not known or named in the proceedings, the court should order their share invested "in public stock of the United States or of this State," or loaned upon real estate security.

These were the provisions of the law applicable to such cases, that were in force when the judgment of October 25, 1854, was rendered, and these were the provisions of the law when the sale was made on April 29, 1856 (R. S. 1855, ch. 119, pp. 1109, et seq.), for the Revised Statutes of 1855 made no change in these respects.

Thus it appears that under the act relating to "Dower," approved February 23, 1839, which became sections 56 to 60 inclusive of chapter 128 of the Revised Statutes of 1845, it was provided that when the commissioners reported that the land was not susceptible of the division in kind, the case was required to be dismissed.

Whereas the "Partition" act, approved January 7, 1839, and the act approved February 15, 1841, became sections 28 to 39 inclusive of chapter 128 of the Revised Statutes of 1845, and provided that when the commissioners reported that only a part of the land

was susceptible of division in kind and that they had divided it, but that a part of the land could not be so divided in kind, the court should order the sheriff to sell such part as was not susceptible of division in kind, and that the sheriff was to pay out the proceeds to the parties entitled thereto under the decree who had received no land in kind, and to make report of his proceedings, together with a list of the expenses and costs, and that the court was only empowered to allow such costs and expenses as were legal and reasonable, and gave the sheriff power to take notes for the purchase price, but that the duty of making distribution of such proceeds was cast upon the sheriff, and he was. made liable on his bond for his acts in this respect. It was further provided that in case of a dispute as to any of such proceeds the same should be retained by the sheriff subject to the order of the court, and provision was made for the court to try the question. It was also provided that if any persons whose interests were sold were absent from the State, or without a legal representative in this State, or were not known or named in the proceedings, the court should order their share to be invested in bonds or upon real estate security.

The Revised Statutes of 1845 for the first time gave the court power to find in the first instance, without the appointment of commissioners, that the land was not susceptible of division in kind, and to order the sheriff to sell it. But this in no wise affected the other provisions aforesaid as to the respective duties and powers of the court and of the sheriff as to the distribution of the fund after the sale.

The sum of the whole matter, therefore, is that when the judgment of October 25, 1854, was entered and when the land was sold on April 29, 1856, the law was that the court was required to find the interests of the parties and to decree partition of the land accordingly. If the land did not appear to be insusceptible of division in kind, the court was required to appoint com-

missioners to divide the land in kind. If the commissioners reported that the land was not susceptible of division in kind, or if in the first instance it was made to so appear to the court, then it was made the duty of the court to order the sheriff to sell it, and the sheriff was required to do so and to pay out the proceeds to the parties, as their interest had been adjudged by the court, and thereafter to report his proceedings to the court, and the court was then to settle the allowance of costs and expenses. This, subject to the provisions as to adverse claims to the proceeds, and as to the interests of non-residents or unknown parties, was the rule of law governing partition cases, at the time the proceedings under review herein were had.

The conclusion is inevitable that the judgment of October 25, 1854, was the final judgment in the case. At that time the plaintiff was not *in esse,* and her mother was not even married. So that the plaintiff could not have been made a party to the action.

The sheriff was required to make distribution of the funds by paying them to the parties or their guardians or legal representatives. (R. S. 1845, ch. 128, sec. 41.)

It appeared by the judgment that one-fourth of the proceeds was decreed to belong to the plaintiff's mother, Sarah I. Muldrow, for life, with remainder in fee to the heirs of her body.

Under a liberal construction of section 41, aforesaid, it would have been competent for the court to have ordered that such share should be invested and the interest arising therefrom to be turned over to the life tenant and after her death the fund to go to the heirs of her body. But the failure of the court to so order was only a matter of error, and did not take away the jurisdiction of the court over the subject-matter of the cause and did not make the judgment void. Likewise the payment of the one-fourth interest to the plaintiff's mother, by the sheriff, if he did so pay it, was a matter

between the sheriff and the remainderman.   The record shows that the plaintiff's father was appointed, and qualified, as her guardian.   It does not appear whether the sheriff paid over the whole of that part of the.proceeds of the sale to the plaintiff's mother, without any regard to the plaintiff's interest in remainder, or whether the sheriff turned over any part of such proceeds to the plaintiff's father as her guardian.   But, however the fact was, it was a matter between the plaintiff, her father, her mother and the sheriff, and in nowise affected the judgment in the case, and did not in any manner impair the title of the purchaser at the sale, for even if such proceeds could be regarded as a trust fund (which was not the case in the proceeding because it was an action at law) the purchaser under the laws of this State was not required to follow the proceeds of the sale and see that they were properly applied.

It was not until the revision of 1865 (R. S. 1865, ch. 152, sec. 39, p. 615) that the duty of making distribution of the proceeds of sale was taken away from the sheriff and devolved upon the court. · That section also provided for the court ascertaining the present value of the dower interest, and paying it to the widow out of the proceeds, the balance to be paid to the remaindermen, or their guardians or legal representatives.

This change in the statute for the first time made the order of distribution, to be entered after the sheriff had made a report of sale, the final judgment in the case.

In Durham v. Darby, 34 Mo. 477, this court held that under the Revised Statutes of 1855 (which was exactly like the Revised Statutes of 1845 in that respect) the judgment of partition and order of sale was the final judgment and that thereafter the case was out of court.   And in Hinds v. Stevens, 45 Mo. 209, this court pointed out that the change made by the revision of 1865 was intended "both to protect the sheriff and any

rights that may have intervened since the former pro-
ceedings.'' And this was again referred to in Murray
v. Yates, 73 Mo. 13, and in Holloway v. Holloway, 103
Mo. l. c. 284. [See, also, Fortune v. Fife, 105 Mo. 433.]

It follows that as the plaintiff was not *in esse* when
the final judgment and order of sale were entered in
the partition suit, she could not have been made a
party to that suit or have been served with process.
But that her interests were represented, first, by her
mother who was *in esse,* and who was the life tenant,
and second, by her guardian who was appointed for her
by the court.

Speaking to a similar question, and to the consti-
tutionality of a statute which makes the life tenant *in
esse* the representative of the remainderman unborn at
the date of the judgment in partition, this court, per
NAPTON, J., disposed of the question in this wise, in
Reinders v. Koppelmann, 68 Mo. l. c. 501:

''But the question remains, will this remainder de-
feat the partition because it is unknown who will be
the heirs of Mrs. Koppelmann until her death? We
think not. Apart from any statute, the English courts
had no hesitation in decreeing partitions in such cases.
In Wills v. Slade, 6 Ves. Ch. 498, it was held by Lord
ELDON that 'it was no objection to a partition that other
persons may come *in esse* and be entitled; for if so, in
every case where there is a settled estate with remain-
der to persons who may come *in esse,* there never can
be a partition.' In Gaskell v. Gaskell, 6 Sim. Ch. 643,
it was held that a tenant for life of an undivided share
of an estate, with remainder to his unborn sons in tail,
may file a bill for partition, and the decree would be
binding on the sons when *in esse.* In Mead v. Mitchell,
17 N. Y. 210, the court of appeals of New York, com-
posed of eight judges, recognized with unanimity the
same doctrine under the statute of that State which is
substantially identical with ours. The parties not *in
esse* are represented by those who take subject to their

rights, but the partition or sale is conclusive so far as third persons or purchasers are concerned. Our statute declares that the sheriff's deed shall be a bar against all persons interested in the premises, who shall have been parties, and against all others claiming from such parties. [Wag. Stat., sec. 34, p. 971.] Of course parties not *in esse* cannot be made parties to the suit for partition, except by naming the owner of the particular estate to which, on certain contingencies, they become entitled, and this is recognized by our statute which declares that if the interest of any one 'be unknown to petitioner or be uncertain or contingent, or the ownership of the inheritance shall depend upon an executory devise, or the remainder shall be contingent, so that such parties cannot be named, the same shall be so stated in the petition.' The requisition of such statement implies that the facts so stated shall constitute no bar to a partition.

"It is insisted, however, that our statute is unconstitutional, for the reason that it conflicts with the provision which declares 'that no person shall be deprived of life, liberty or property without due process of law.' This provision of our Constitution, doubtless, may be found in that of New York where the case of Mead v. Mitchell was decided, and in that of most other States, and is certainly in the Constitution of the United States, and is in all a translation from Magna Charta, which we may assume was binding on the English judges. The due process of law required is not dispensed with in our statute."

This case was cited and approved in 'Sikemeier v. Galvin, 124 Mo. l. c. 371, where BRACE, J., said: "In Reinders v. Koppelmann, 68 Mo. 482, the petitioner was the owner of the life estate in the whole tract proposed to be divided, and also of an interest in the contingent remainder in favor of the persons who, upon the determination of the life estate, would take the fee, and it was held that no objection could be made to the

partition on account of the property being subject to the life estate. Here, one of the petitioners owned the whole life estate, and the other an interest in the contingent remainder, and, by analogy, a like objection ought to be sustained to the petition herein. In that case it was also held that 'a partition will not be refused because there is a contingent estate in the land, which may hereafter be vested in persons not yet *in esse*. The parties not *in esse* are represented by those who take subject to their rights, and the partition or sale is conclusive.' ''

It is argued, however, that in proceedings in equity for a partition, as also under the statute of New York as shown from the reference in Mead v. Mitchell, 17 N. Y. 210, the fund arising from the sale is substituted for the land, and that as there was no such order of substitution in this case, the judgment is void.

But it must be always borne in mind that the proceeding was not a bill in equity for partition, but was purely a suit for partition under the statute of this State.

The statute of 1845 made no provision for an order of substitution, but on the contrary directed the sheriff to distribute the proceeds of the sale according to the order of the judgment, and made the sheriff liable on his bond in the performance of such duty. The statute also gave the court power to order the interest of a non-resident, or of one who had no legal representative in this State, or who was unknown or not named in the proceeding, to be invested. But, as hereinbefore pointed out, the failure of the court to so order might have been error, but did not affect the jurisdiction of the court, or render the judgment void.

Other interesting questions have been learnedly discussed by counsel, but as these considerations show that the title of the defendant, acquired by mesne conveyances from the purchaser at the sheriff's sale in partition, is a good and valid title, as against the parties

to that action and also against the plaintiff, who was not then *in esse,* but was represented in the case in the manner pointed out, it is unnecessary to consider such other questions here.

The judgment of the circuit court is right, and it is, therefore, affirmed.

All concur, except *Robinson, J.,* absent.