## EVA MAY ACORD v. EVELYN BEATY et al., Appellants.

### Division Two, June 20, 1912.

1. **PARTITION: Deed: Land Omitted from Description: Notice.**
X, owning 542 acres of land, made a deed to five grantees in common for life, remainder to their heirs and assigns, but failed to describe one hundred acres of the tract. The grantees made a voluntary deed of partition, in which they referred to X's deed, and entered into possession of their tracts, aggregating the whole of the 542 acres. *Held*, that a grantee by warranty deed from one of these grantees takes with notice, and cannot prevail against an heir of that first grantee.

2. ————: **Voluntary: Rights of Persons not In Esse.** Where life tenants make voluntary partition which is fair and equal when made, and which preserves the rights of parties not *in esse*, such partition is binding on the persons not *in esse*.

Appeal from Saline Circuit Court.—*Hon. Samuel B. Davis*, Judge.

Reversed.

*Frank Rigney* and *Robert M. Reynolds* for appellants.

(1) Parol partition, followed by possession, where all the parties derive title from a common source is valid. Bompart v. Roderman, 24 Mo. 385; Asken v. Barnett, 50 Mo. 506; Nave v. Smith, 96 Mo. 596; Sutton v. Porter, 119 Mo. 100; Gulick v. Huntley, 144 Mo. 241; Whitsett v. Wamack, 159 Mo. 14; Starr v. Bartz, 219 Mo. 47. Such partition passes the equitable title, and the court will vest the legal title in the parties entitled thereto. Sutton v. Porter, 119 Mo. 100; Gulick v. Huntley, 144 Mo. 241. (2) Nor does the fact that the estate is one in which there is a contingent remainder, bar the right to a partition, such estates are alienable under law, and are therefore the subjects of parti-

tion. Preston v. Brent, 96 Mo. 552; Reinders v. Kopplemán, 68 Mo. 502; Sikemeir v. Galvin, 124 Mo. 367. (3) Such partitious binds minors and those under coverture; in such cases the life tenant represents the remainderman. The only requirement is that the partition, be fair, equitable and just. Jenkins v. Fahey, 73 N. Y. 355; Mead v. Mitchel, 17 N. Y. 210; Sutton v. Portor, 119 Mo. 100; Gulick v. Huntley, 144 Mo. 241; Sparks v. Clay, 185 Mo. 410. 1 Story's Eq. Jur. (12 Ed.), 656 A.

*Duggins & Duggins* for respondent.

(1) The partition by the life tenant does not make title. No title passed by the deed or contract. The parties do not take title by purchase. It is simply an adjustment of the boundaries of such lands as they own as co-tenants and does not confer any new title. Whitsett v. Wamack, 159 Mo. 23; Palmer v. Alexander, 162 Mo. 131; Snyder v. Elliott, 171 Mo. 363; Sharp v. Stewart, 181 Mo. 529. By the deed the parties lost nothing and acquired nothing except defined boundaries to the land they previously held in common. Whitsett v. Wamack, 159 Mo. 24. (2) The defendants cannot in equity and good conscience compel the plaintiff to accept the land allotted to her father, when the life tenants and remainderman had no legal title to one hundred acres of the real estate which the life tenants attempted to partition. Twenty acres of this land was allotted to plaintiff's father and he conveyed it by warranty deed fifteen years before he died. It would be inequitable and unjust to compel plaintiff to bring suits in ejectment to try and recover the twenty acres. The deed or contract in partition did not make title. (3) The first case cited by counsel for defendants, under point one, in our opinion conclusively settles the question adversely to appellant's contention. Bompart v. Roderman, 24 Mo. 399; Elliott v. Delaney, 217 Mo. 29. (4) We respectfully submit to the court

that we have carefully examined the authorities cited by appellant's counsel and we fail to. find any case where a remainderman was held to be bound by a parol partition of the life tenant. All the cases cited and referred to by counsel for appellant referring to the validity of parol partition is where the parties are *sui juris*. And where the remaindermen or reversioners are held bound, are in suits in partition brought under the statute.

ROY, C.—This is an ejectment brought in the circuit court of Saline county, August 18, 1905, for an undivided fifth of about 87.½ acres of land. There was judgment for plaintiff, and defendants appealed.

There is no dispute about the facts, which are as follows: On July 7, 1871, Judiah E. Higby, being the owner of five hundred and forty-two acres of land in that county, executed a warranty deed to Hannah Phillips, George A. Phillips, Ellsworth Phillips, Evelyn Phillips (now Beaty, a defendant), and Elmore Phillips (the father of plaintiff).

Said conveyance was during the natural lives of the grantees, the remander to their heirs and assigns forever, except the interest of the said Hannah Phillips, at whose death her fifth interest was to be divided among her cograntees. By mistake a hundred acres of the land then owned by Higby was omitted from the description. The land actually described by numbers in the deed only amounted to four hundred and forty-two acres. But the deed called for five hundred and forty-two acres, and the grantees at once went into possession under that deed of the whole five hundred and forty-two acres.

On March 27, 1879, the grantees in that deed executed a mutual partition deed of all the land. That deed contained the following recital:

"That whereas, one Judiah E. Higby by deed dated July 7th, 1871, and recorded in Book 18 at page

553, in the office of the recorder of deeds of and for Saline County, State of Missouri, did convey to the said Hannah Phillips, George A. Phillips, Elmore Phillips, Ellsworth Phillips, and Evelyne Phillips, (now Evelyne Beattie) certain tracts of land being and lying in Saline County, Missouri, and described as follows:" (here followed a description of all the land amounting to 542 acres).

Then followed this language: "Which said conveyance was to the said grantees during their natural lives and to their heirs and assigns forever except the interest of said Hannah Phillips at whose death her one-fifth interest is to be divided between said George Allen Phillips, Elsworth Phillips, Elmore Phillips and Evelyne Phillips, and their heirs, which said deed is here referred to and made a part hereof."

In that partition Elmore Phillips got an undivided third of a detached sixty acre tract and also ninety acres. Thirty acres of the ninety acres were a part of the land not described in the Higby deed. The defendant Evelyn Beaty (Phillips) got 117.50 acres which were described in the Higby deed. The fairness of that partition is practically conceded, except as to the effect of the fact that thirty acres of the land allotted to Elmore Phillips were omitted from the description in the Higby deed. That partition deed contained covenants of mutual warranty. The parties at once took possession separately of the parcels respectively allotted to them.

On May 29, 1882, Elmore Phillips conveyed the ninety acres allotted to him to Henry C. Sparks by warranty deed for the expressed consideration of $2250.

Elmore Phillips died July 18, 1897, leaving plaintiff, his child, as his only issue. She was born February 8, 1882, and was married to her present husband October 4, 1899.

In 1904, plaintiff recovered judgment in ejectment against Edward Staub and others for an undivided fifth of portions of the Higby land which were not allotted to her father or to Evelyn Phillips. On August 14, 1905, plaintiff, by warranty deed conveyed to Edward Staub the undivided fifth of two hundred and fifty acres of the Higby land including the ninety acres, which had been allotted to her father. That deed contained these words, "It being intended herein to convey the entire interest of the said Eva May Acord in and to said real estate."

The answer prayed for a decree declaring that the title to said omitted hundred acres be declared to have vested in the parties in accordance with the Higby deed.

## OPINION.

I. When the partition deed was made in 1879, the parties had no paper title to the omitted hundred acres. Ten years had not elapsed, and they had no title by the Statute of Limitations. They were the owners of it in equity as against the world and no one was disputing their right. It was intended to be included in the deed, but was omitted by mistake. The partition deed recited the Higby deed and made it a part of the partition deed. More than that, the partition deed stated that the Higby deed conveyed the hundred acres, and that such conveyance was for life and then to the heirs of the grantees, except as to the share of Hannah Phillips which went on her death to her co-grantees. When Elmore Phillips conveyed to Sparks in 1882, Sparks and all claiming under him were affected with notice of the contents of the partition deed and of the Higby deed and with notice that the Higby deed was intended to convey the omitted hundred acres. Such being the case, the plaintiff, at the death of her father, if she chose to abide by the partition, was

the absolute owner, and entitled to the possession of all the land that was allotted to her father in the partition.

No one would have had any defense to her claim. Her father had only a life estate therein, and he could convey no more than he had. His rights were fully set out in the partition deed. Thus we see that the fact that the hundred acres were omitted from the High-by deed cuts not the slightest figure in the case. It also follows that the partition was a fair one to all concerned.

II.  In Reinders v. Koppelmann, 68 Mo. l. c. 501, it was held that in a partition suit the parties not *in esse* are represented by those who hold subject to their rights, and that such persons not *in esse* are bound by the parties.

That case did not base the ruling on our partition statute, but on the contrary the court said: "Apart from any statute, the English courts had no hesitation in decreeing partition in such cases. In Wills v. Slade, 6 Ves. Ch. 498, it was held by Lord ELDON that 'it was no objection to a partition that other persons may come *in esse* and be entitled; for if so, in every case where there is a settled estate with remainder to persons who may come *in esse,* there never can be a partition.' In Gaskell v. Gaskell, 6 Sim. Ch. 643, it was held that a tenant for life of an undivided share of an estate, with remainder to his unborn son in tail, may file a bill for partition, and the decree would be binding on the sons when *in esse.*"

The case of Sparks v. Clay, 185 Mo. l. c. 408, cited and approved Reinders v. Koppelmann, holding that a life tenant *in esse* is a representative of the remainderman unborn.

Fletcher's Equity Pleading & Practice, section 33, says: "The doctrine grows out of convenience or necessity in the administration of justice. Especially

is it applicable where the persons not before the court are only possible parties, not *in esse*, and where the interests of all parties in being required a decree which will completely and finally dispose of the subject-matter of the litigation. Such possible parties cannot, as a matter of course, be brought before the court in person; and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. If persons in being are before the court who have the same interest, and are equally certain to bring forward the entire merits of the question, and thus give such interests effective protection, the dictates both of convenience and justice require that there should be a complete decree."

Story on Equity Pleading, sec. 144 *et seq.,* is to the same effect. We may then accept it as a settled doctrine that in a partition by procedure in court, the parties not *in esse* are represented by those who hold subject to their interest and are bound by the decree.

But it has been suggested that in a voluntary partition a life tenant or tenant in tail or other person holding subject to the interest of the parties not *in esse* could not bind the parties not *in esse*, and that such partition binds only the interest of the life tenant or others who are in *propria persona* parties to the partition. The English authorities are a unit in favor of the proposition that where the life tenants make voluntary partition which is fair and equal at the time that it is made it is binding on the persons not *in esse*. [Thomas v. Gyles, 2 Vern. Ch. 232.]    2 Coke on Littleton, section 170a, says: "It is held that where parceners and their husbands make partition of the lands held in parcenary, if the partition is equal when made it cannot be avoided by the wives or their heirs at any time. The reason is given thus, 'for the husbands and wives were compelled by

law to make partition, and that which they are com-
pelled to do in this case by law, they may do by agree-
ment without process of law. If the annual value of
the land be equal at the time of the partition, and after
become unequal by any matter subsequent as by sur-
rounding, ill-husbandry, or such like, yet the partition
remains good. But if the partition be made by force
of the king's writ, and judgment thereof given, it shall
bind the *feme coverts* forever, albeit the parts be not of
equal annual value; because it is made by the sheriff by
the oath of twelve men by authority of law; and the
judgment is, that partition shall remain firm and sta-
ble forever as hath been said.' ''

The same author says, section 173b: ''A partition
of land in tail between parceners, if it be equal at the
time of the partition shall bind the issues in tail for-
ever, albeit the one do alien her part.'' And again in
section 171a that author states: ''But if the partition
made between the husbands (*perenter les barons* [1])
were thus, that each part at the time of the allotment
made was of equal yearly value, then it cannot after-
wards be defeated in such cases.''

And in section 166a he says: ''If coparceners
make partition, at full age and unmarried, and of sane
memory, of lands in fee simple, it is good and firm for-
ever, albeit the values be unequal; but if it be lands en-
tailed, or if any of the parceners be of *non sane mem-
orie,* it shall bind the parties themselves, but not their
issues unless it be equal; or if any be *covert,* it shall
bind the husband, but not the wife or her heirs; or if
any be within age, it shall not bind the infant.''

Allnat on Partition, page 31, says: ''Partition
between parceners in tail, if it be fair and equal at the
time, shall bind the issue in tail forever, although the
one alien her part. But if the partition be unequal,
then, although it shall conclude the tenants in tail them-
selves during their lives, yet the issue of the parcener

who has the lesser part in value allotted to her, may avoid it after her death."

Thus we see that the English courts hold that the only difference between a voluntary partition and one made by a suit in court is that in order to bind persons not *in esse* the voluntary partition must have been equal at the time it was made. If it was equal when made, it is binding upon persons not *in esse*. They also recognize the doctrine that the parties can do by a voluntary partition what the law would require them to do by a suit in court. See also 21 Am. & Eng. Ency. Law, p. 1132.

30 Cyc. 159 states the English doctrine as above set out and then states that the courts of the United States so far as they have spoken on the subject dissent from the English decisions. The only American case cited is Buxton v. Bowen, 2 Woodb. & M. 365.

Freeman on Cotenancy & Partition, section 416, says that voluntary partition by tenants in tail does not bind the heir in tail. That author cites only Buxton v. Bowen, supra.

21 Am. & Eng. Ency. Law, page 1134, says that in England a tenant in tail is held to be bound, while in the United States it is otherwise, citing Buxton v. Bowen, supra, and Buxton v. Uxbridge, 10 Met. 87. It is thus seen that the only cases in the United States in support of the doctrine that the heir in tail is not bound are those two Buxton cases. Those two cases arose out of the same will. Benjamin Buxton devised one-half of his land and personalty to his son James in fee and the other half to his son John in tail. John and James executed a mutual partition deed dividing the land between themselves. After the partition, John conveyed the land allotted to him in fee to a third party. After John's death, his son brought suit against the party holding under the deed made by his father, for an undivided half of the land allotted to John. That case was known as Buxton v. Bowen,

supra, and was decided by the United States Circuit
Court of the first circuit.

There are two reasons why that case should not be
regarded as authority on the question here under con-
sideration.    The first is that it involved only land
allotted to the father of the plaintiff.    Under the doc-
trine of the English court holding that a partition
bound the heir in tail, the plaintiff in that case would
have been entitled to the whole of the land sued for
and certainly he would be entitled to the half which he
sued for.    It seems to us that the discussion of the
question as to whether that partition was binding on
the heir in tail was entirely outside of the issues in that
case.

In the second place, the court based its ruling al-
most entirely on the fact that James and John when
they made a partition did not hold by equal rights, one
owned in fee simple and the other in fee tail, and the
case was made to turn on that distinction.    The court
did not discuss the authorities on the question here in-
volved.    The case of Buxton v. Uxbridge was also for
a part of the land allotted to John, the father of plain-
tiff.    That case does cite Coke on Littleton, sections
170a, 173b.

It will be found by a comparison of the quotations
from Coke on Littleton heretofore made that they do
not support the holding in the Buxton case, but are
diametrically the opposite.

We conclude that the English doctrine is right, and
hold that the voluntary partition, having been fair and
equal when made, is binding on the plaintiff herein
who was not *in esse* at the time of the partition.

Freeman on Cot. & Part. (2 Ed.), section 482,
says: "But in order to bind the interests of persons
not *in esse* the proceedings must be adapted to that
purpose. If no mention is made of such interests, and
the pleadings and judgment are founded upon the
theory that the persons in being before the court are

the only persons having any estates or interests in the property, then no interests are affected except those vested in the parties before the court. Whenever it is sought to bind the interests of persons not then in being, the judgment must be one which 'provides for and protects such interests by substituting the fund derived from the sale of this land in place of the land, and preserving it to the extent necessary to satisfy such interests as they arise.' "

In this particular deed the rights of the parties not *in esse* were recited in the deed, and their rights were preserved, the corpus of the property being also preserved, so that it was impossible for the plaintiff to be injured by the partition.

The claim is made that because Elmore Phillips, the plaintiff's father, got more than his proportion of the hundred acres, the description of which was omitted from the Higby deed, the partition as to this plaintiff should not be held binding. It is said that the omission of the description of that hundred acres from the deed renders the title thereto bad. In answer to that, we say that every fact necessary to make the title good by adverse possession appears in the record.

At the date of the Higby deed the grantor therein was *sui juris,* and placed the grantees in that deed in possession of the whole 520 acres, and adverse possession thereunder has been held ever since. Legal title by adverse possession ripened in July, 1881, twenty-four years before this suit was begun.

In Scannell v. Soda Fount. Co., 161 Mo. 606, l. c. 618, it was held that a title acquired by adverse possession under our statute is in every respect as good for purposes of attack or defense as a title by deeds running back to the government. That was a suit by the vendor to compel specific performance of a contract for the sale of real estate. The contract provided in effect that it should not be binding "if any defect

should be found in the title." The court said (l. c. 619), "A court of equity would not force upon a defendant a title in which there was any real defect but it will not hesitate to require him to stand up to his contract when the title offered him is good beyond all reasonable apprehension."

In Greffet v. Wilman, 114 Mo. l. c. 121, for specific performance, the court, speaking of a title by adverse possession against the heirs of a deceased party, said: "He has now been dead about forty years, and no such relative has turned up. The plaintiff has been in possession of the premises for more than fifteen years, and we do not think the defendant had the slightest ground to apprehend any annoyance whatever from any person claiming title to any interest in the land through relatives of Henry McKee, deceased."

In addition to what is said above, it is said in 30 Cyc. 167, that where by statute or otherwise a warranty is implied in partition it is not broken until eviction, and Freeman on Cotenancy and Partition, section 533, holds the same. No one holding under the partition deed in this case has ever been evicted under a claim adverse to that title and no such claim has ever been made.

The plaintiff seems to have labored under a mistake as to her rights in the lands allotted to her father, but that is her misfortune and these appellants cannot be made to suffer therefor. She could have recovered all the land allotted to her father. The defendant Eyelyn Beaty could not recover any of it, for she had parted with all her right to it in the partition deed. We do not think it should be overlooked that in the deed made by plaintiff to Staub, she not only conveyed an undivided fifth of the land, but stated in the deed that it was intended to convey all her interest in the land. That certainly meant that if she had more than a fifth it should pass by the deed. It could not have been

meant for any purpose except to pass whatever interest she got by the partition. If anybody is to suffer for her failure to insist upon her full and absolute right to all the property allotted to her father, she must bear the loss and cannot shift that loss onto these defendants.

The judgment is reversed.

*Blair, C.,* dissents.

PER CURIAM.—The foregoing opinion of *Roy, C.,* is adopted as the opinion of the court. All the judges concur.