IKE NOYES, Respondent, v. GEETTA HILL STEWART, RUBIN E. WILLIAMS, sometimes known as THOMAS RUBIN WILLIAMS, and the unknown heirs of LULA WILLIAMS TAYLOR, Deceased, and RUBIN HILL, Deceased, and WILLIAM HARRIS, also known as WILLIAM E. WILLIAMS, Appellants, No. 41474—235 S. W. (2d) 333.

Court en Banc, December 11, 1950.

Rehearing Denied, January 8, 1951.

*Jesse I. Moritz* and *J. B. McFarland* for appellants.

*E. A. Farris* and *Ike Skelton* for respondent; *Leon W. Goff* of counsel.

[**333**] HYDE, C. J.—Action to quiet title to 48 acres of land in Lafayette County. The trial court entered a decree declaring plaintiff to be owner in fee simple and defendants have appealed. The question involved the right of a life tenant to have partition against contingent remaindermen by sale of the [**334**] property and to keep part of the proceeds of such sale as the commuted value of the life estate.

Rubin Hill, the owner of this and other land, died testate in 1905. His will gave his wife Lucy a life estate in his land (about 97 acres in Lafayette County) and then provided, as follows: "At the death of my wife, I give and devise to my children, Mary Shields, wife of Ben Shields, my son, Thomas Hill, my son, William Hill, and my daughter, Annabel Williams, wife of Earnest Williams, and their bodily heirs, all of my said real estate, but in case any of my said children shall die without issue or bodily heirs living at the time of the death of any such child, then the part of said child so dying shall go to and vest in my right heirs or those who would be my heirs at law had I died intestate at the time of the death of such child so dying without issue living."

Rubin's widow Lucy died in January 1908. His four children, the two sons and two daughters named in his will, survived; but only the two daughters are now living. Thomas Hill died in June 1919 without surviving issue; William Hill died in June 1929, survived by defendant GeEtta Hill Stewart and a son who has since been declared to be dead by the Probate Court; Mary Hill Shields and Anna Bell (Annabel) Williams are still living. Defendant Rubin E. Williams, also known as Thomas Rubin Williams, is the son of Anna Bell Williams; and defendant William Harris, also known as William E. Williams, is the grandson of Anna Bell Williams, being the son of her deceased daughter Lula, who died before this suit was begun.

In March 1908, a suit was brought by Mary Hill Shields in the Circuit Court of Lafayette County to partition the 97 acres. The defendants were her two brothers Thomas and William, William's wife and their four children who were then living, including GeEtta Hill; and her sister Anna B. Williams, Anna's husband and their two children Lula and Rubin. (Rubin is the defendant Rubin E. Williams herein and Lula's son William Harris is a defendant herein.) The petition in the 1908 suit set out the Will of Rubin Hill, stated that it had been probated in Lafayette County and alleged that the four children of Rubin Hill were joint owners in fee. The answer of the adult defendants alleged that it was the intention of

the testator to give his children a life estate only; and there was also an answer of the guardian ad litem for the testator's grand-children, all of whom were then minors. The Court found that "the plaintiff Mary Hill Shields, and the defendants Thomas Hill, William Hill and Anna B. (Annabel) Williams, are each entitled to an undivided one-fourth interest in said real estate for and during their natural lives, with the remainder in fee to their bodily heirs, and in case any of them should die, without issue, or bodily heirs, living at the time of his or her death, then his or her part shall go to and vest in the right heirs of Rubin Hill."

The Court decreed that the land be partitioned and accordingly appointed commissioners for that purpose. The commissioners divided the land into four irregular tracts, each with a value of $962.90, and assigned them to the four brothers and sisters named in the will "for and during their natural lives, with the remainder in fee to their bodily heirs." The Court approved the commissioners' report and decreed that these four "have and hold the real estate set off, allotted and assigned to them for and during their natural lives with the remainder in fee to the bodily heirs etc." However, the Court then ordered that "the entire fee" in the twenty-four acre tract set off to Mary Hill Shields be sold and that out of the proceeds the value of Mary Hill Shields' life estate be ascertained and paid to her and that the remainder be held in trust by the Court for the bodily heirs of the four brothers and sisters. The sheriff sold the twenty-four acre tract to Thornton A. Campbell for $760.00. Mary Hill Shields was then forty-two and her life estate (after payment of costs) was computed at $463.73 and that sum was paid to her and the balance of $192.51 was paid to a trustee for the heirs appointed by the Court. The twenty-four acres of land involved sold at that time is [335] one of the tracts later conveyed to plaintiff Noyes.

In May 1911 a suit was filed in the Circuit Court of Lafayette County by Campbell, the 1908 purchaser of the Shields' 24 acres, and Thomas Hill, to partition the 24 acre tract set off in the 1908 suit to Anna Bell Williams. The Will of Rubin Hill was set out in the petition and it was alleged that Campbell became the owner of the interest of Anna Bell Williams by foreclosure of deed of trust; and that this interest was "for and during the natural life with remainder to the bodily heirs of said Anna Bell Williams." The defendants were the brother and sisters of Thomas Hill and their children who were defendants in the 1908 suit; and still being minors these children were represented by a guardian ad litem. The decree found that the land could not be partitioned without great prejudice and ordered the entire fee sold. However, it found the interest of Anna Bell Williams, owned by plaintiff Campbell to be "for and during the natural life of the said defendant Anna

Bell Williams with remainder to the bodily heirs of said defendant Anna Bell Williams and if said Anna Bell Williams dies without bodily heirs then to the heirs of Rubin Hill deceased.'' The land was sold for $760.00 to Frank R. Howe to whom Campbell had previously conveyed the Shields' 24 acres by quitclaim deed. The life estate of Anna Bell Williams, who was then 34, was fixed (after payment of costs) at $433.83 and this was paid to Campbell and another mortgage creditor Hickerson, a defendant. The balance of $147.78 was paid to a trustee for the heirs appointed by the Court. After the death of Thomas Hill, Howe got quitclaim deeds from William Hill, Anna Bell Williams and Mary Hill Shields. Howe's administrator conveyed both 24 acre tracts by administrator's deed to H. J. Dierking in 1939. Dierking conveyed to plaintiff by warranty deed in 1946.

Defendants contend that the judgment in the 1908 Shields' partition suit, ordering the sale of the 24 acre tract set off to Mary Hill Shields, exceeded the relief sought and was void. We think this contention must be sustained. There was no attempt to make unknown contingent remaindermen parties. The Court appointed commissioners to partition the whole 97 acre tract between the four interests considered. They did partition it and their report was confirmed. Everything sought by the pleadings was thereby accomplished and every issue raised was determined. There was nothing further presented to the Court by the pleadings upon which it could have had authority to make partition between this life tenant and the contingent remaindermen of her estate. ''The decree should have been limited to the issues.'' (Gulick v. Huntley, 144 Mo. 241, 46 S. W. 154.) ''A decree outside the record issues is invalid and has been held void even when attacked collaterally.'' (Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9 and cases cited, l. c. 15.) Thus this part of the judgment was coram non judice and void. (Smith v. Holdoway Construction Co., 344 Mo. 862, 129 S. W. (2d) 894; Campbell v. Campbell, 350 Mo. 169, 165 S. W. (2d) 851; Finley v. Smith, 352 Mo. 465, 178 S. W. (2d) 326.) However, we think this judgment is void as against defendants herein for another reason, which also applies to the judgment in the 1911 case, namely: there is no authority for partition between a life tenant and contingent remaindermen and there is nothing that can be divided between them.

This proposition is established by Dodd v. McGee, 354 Mo. 644, 190 S. W. (2d) 231; Willhite v. Rathburn, 332 Mo. 1208, 61 S. W. (2d) 708; Gray v. Clement, 286 Mo. 100, 227 S. W. 111; Carson v. Hecke, 282 Mo. 580, 222 S. W. 850; Gibson v. Gibson, 280 Mo. 519, 219 S. W. 561; Shelton v. Bragg, (Mo. Sup.) 189 S. W. 1174; Stockwell v. Stockwell, 262 Mo. 671, 172 S. W. 23; Hill v. Hill, 261 Mo. 55, 168 S. W. 1165. Plaintiff apparently concedes that this is the law now, but says that prior to 1914, and

Stockwell v. Stockwell, our decisions permitted partition to be maintained against contingent remaindermen by a life tenant who had an interest in the contingent remainder, citing Reinders v. Koppelmann, (1878) 68 Mo. 500; Sikemeier v. Galvin, [336] (1894) 124 Mo. 367, 27 S. W. 551; Sparks v. Clay, (1904) 185 Mo. 393, 84 S. W. 40, and Acord v. Beaty, (1912) 244 Mo. 126, 148 S. W. 901. Plaintiff contends that title to the land involved was made under the rule of law announced in the Reinders case, and followed in the other cases cited, and that property rights acquired in reliance upon these decisions should not be invalidated; citing Klocke v. Klocke, 276 Mo. 572, 208 S. W. 825 and similar cases. However, our conclusion is that the Reinders case, and the others cited, did not authorize what was done in this case and we know of no decision of this Court that ever did authorize it. These cases were distinguished but not overruled (although overruled on some points in later cases in Stockwell v. Stockwell, which presented a situation similar to that herein involved.

In Reinders v. Koppelmann, plaintiff was in possession as the owner of an estate for the life of his wife, and was also the owner of one-fourth of one-half of a vested remainder. The other half of the remainder was devised "to the nearest and lawful heirs of mine and that of my wife, share and share alike." Testator had no children; his widow had married plaintiff and thus only the one-fourth of the whole remainder, which was to go to her heirs, was contingent. The vested remaindermen and certain others as ostensible heirs of Mrs. Reinders were made defendants. Their demurrer to the petition was sustained by the Circuit Court and on appeal this Court held that partition could be had. It was said: "The parties not *in esse* are represented by those who take subject to their rights, but the partition or sale is conclusive so far as third persons or purchasers are concerned." Apparently that meant that Mrs. Reinders' heirs could be represented by her. (See Brown v. Bibb, 356 Mo. 148, 201 S. W. (2d) 370.) It has been suggested that this decision could be explained as partition between remaindermen on the theory of merger of a portion of plaintiffs' life estate with his vested interest in the remainder. (The Transfer and Partition of Remainders In Missouri—Hudson. Univ. of Mo. Bulletin, Law Series 14, p. 25.) Partition between vested remaindermen can be made subject to the life estate. (Preston v. Brant, 96 Mo. 552, 10 S. W. 78; Doerner v. Doerner, 161 Mo. 399, 61 S. W. 801; Carson v. Hecke, 282 Mo. 580, l. c. 591, 222 S. W. 850; Gray v. Clement, 286 Mo. 100, 227 S. W. 111.) Although there is some loose language in the Reinders case, it is not authority for a compulsory sale of an entire contingent remainder on the life tenants' suit and certainly not for the purpose of commuting the life estate and leaving only a small portion of the value of the

land for the remaindermen. The first decision on this question, Carson v. Hecke (282 Mo., l. c. 597), holds that a life tenant cannot enforce commutation.

Nor is Sikemeier v. Galvin authority for such procedure if what is said in that opinion is confined to the facts of that case. There a testator devised land to his daughter for life and on her death "to be vested in her right heirs, whether lineal or collateral," and provided that at any time the land "may be sold and conveyed in fee simple absolute by the concurrence in the deed, as parties, of the ostensible heirs." The daughter and one of her sisters who was a possible heir brought suit for partition against the other sister and her two brothers. A demurrer by the defendants was sustained below, and this was held to be error on the authority of Reinders v. Koppelmann; but, since neither of the plaintiffs had a vested interest in the remainder, the facts were not comparable to the situation in that case. However, this Court said: "The provisions in the tenth item of the will, by which the parties to this action who are the 'ostensible heirs or devisees' therein mentioned, are expressly authorized, all concurring, to sell and convey the premises in fee simple, for reinvestment during the lifetime of the tenant for life can hardly be construed as a prohibition of a resort to a mode of alienation authorized by law, at the instance of one or more of such heirs or devisees, by which the same purpose may be accomplished." Therefore, this case can be explained by the peculiar provisions of the Will, and it [337] was so distinguished in Stockwell v. Stockwell. (262 Mo., l. c. 686.) This Court further said: "The net proceeds (of the sale), after the value of the interest of Mrs. Sikemeier has been ascertained and commuted, would have to be reinvested in accordance with the provisions of the will, under order of the Court until the termination of the life estate." It was noted that the will also provided "the proceeds (of a sale) are, with the same concurrence, that is, of the ostensible heirs * * * to be reinvested * * * subject to the same trusts and conditions as the realty." Thus the real basis for that case is the Will and not Reinders v. Koppelmann. Limited to its actual facts, it cannot be considered authority for the judgments in the 1908 and 1911 partition suits, involved herein, because there were no such provisions in the Will of Rubin Hill.

Sparks v. Clay was a case of partition between four tenants in common (grantees in a deed from their parents) two of whom (sons of the grantee) were owners of vested estates in fee simple. The conveyance to the two daughters (one of whom was plaintiff's mother) was "for their use and benefit during their natural lives and in fee simple to their heirs." The Court found the land could not be divided and ordered it sold. The order of distribution as

to the two daughters was as follows: "To Mary L. Clark and her heirs, and to Sarah L. Sparks, formerly Sarah I. Muldrow, and her heirs, each one-fourth part thereof for their use and benefit during their natural lives, and at their death in fee simple to the heirs of their body." Thus it appears that proceeds of this one-fourth interest were to be paid to plaintiff's mother as a trustee for her heirs. Apparently this money was dissipated and plaintiff, who was born after the partition suit, sued for a one-fourth interest claiming the proceedings were void as to her. This Court held the partition valid and that plaintiff not *in esse* was represented by her mother. This Court said: "It would have been competent for the court to have ordered that such share should be invested and the interest arising therefrom to be turned over to the life tenant and after her death the fund to go to the heirs of her body. But the failure of the court to so order was only a matter of error, and did not take away the jurisdiction of the court over the subject-matter of the cause and did not make the judgment void." This partition suit was commenced in 1853 and this Court said: "It was not until the revision of 1865 (R. S. 1865, ch. 152, sec. 39, p. 615) that the duty of making distribution of the proceeds of sale was taken away from the sheriff and devolved upon the court." It was not shown whether the money was kept by plaintiff's mother or later paid to her guardian and this Court held "it was a matter between the plaintiff, her father, her mother and the sheriff * * * and did not in any manner impair the title of the purchaser at the sale." Since there were two vested interests in fee, the Court had authority, under Reinders v. Koppelmann, to order partition and its failure to properly safeguard the trust fund arising therefrom did not make the judgment of partition void.

Acord v. Beaty was a case of voluntary partition in kind between five grantees of a deed "to the said grantees during their natural lives and to their heirs and assigns forever." This Court reviewed and followed English authorities holding that such a voluntary partition if equal when made is binding on persons not *in esse*. This Court found the division equal and said: "In this particular deed the rights of the parties not *in esse* were recited in the deed, and their rights were preserved, the corpus of the property being also preserved, so that it was impossible for the plaintiff to be injured by the partition." The other grantees had conveyed 90 acres of the land to plaintiff's father for his share and plaintiff later made a deed to this land, and her undivided interest in other land not included in her suit, by which she sought to recover an undivided 1/5 in land not conveyed in her deed. It is also suggested that plaintiff might have been held bound by the voluntary partition because of her previous deed recognizing it.

[338] Thus it will be seen that, while Reinders v. Koppelmann and Sparks v. Clay approved of partition between remaindermen where some were vested and some contingent (either to divide the land or to sell it and hold all of the proceeds in trust, giving the life tenants the interest only) and also held that remaindermen not *in esse* could be represented by their parents in such a case, they did not authorize partition in a suit by a life tenant against contingent remaindermen only. This is not authorized even if the life tenant is joined by one who might become a contingent remainderman, as in Stockwell v. Stockwell (262 Mo., l. c. 684-687) where these cases are distinguished. Sikemeier v. Galvin can be distinguished by the special provisions of the Will involved, as it was in Stockwell v. Stockwell, and Acord v. Beaty by lack of prejudice to the plaintiff therein and her conveyance of the land allotted to her father. A proceeding by a life tenant to compel a sale is now authorized by statute (Sec. 1710, R. S. 1939, Mo. R .S A., enacted Laws 1925, p. 138) on the ground that the estate "is burdensome and unprofitable for that the cost of paying the taxes and assessments thereon and holding, maintaining, caring for and preserving the lands from waste, or injury, and deterioration, exceeds the reasonable value of the rents and profits thereof, and that a greater income can probably be had from proceeds of a sale thereof invested in bonds." However, the life tenant is only entitled "to net interest or income above the expenses of administration accruing from the proceeds of the sale, as invested in the manner directed by the statute and under the orders and supervision of the Court." (Willhite v. Rathburn, 332 Mo. 1208, 61 S. W. (2d) 708; Brittin v. Karrenbrock, Mo. App., 186 S. W. (2d) 35.) It seems clear that the purpose of the 1911 partition suit herein involved was to get the court to authorize what the testator sought to prevent, by allowing the greater part of the value of the land to be used to pay debts of the life tenants at the suit of her creditor who had required her interest by foreclosure of a mortgage. This would violate Sec. 1721, R. S. 1939, Mo. R. S. A. (Sec. 4383, R. S. 1899; Sec. 2570, R. S. 1909) by authorizing a partition contrary to the intention of the testator. Surely the doctrine of virtual representation does not go so far as to consider remaindermen adequately represented by an ancestor's creditor, in bringing such a suit. His interests necessarily conflict with theirs when he seeks to get part of the corpus for himself. We hold that this creditor had no right to compel partition against unknown and undetermined contingent remaindermen (in fact no allegations stated an intent to affect their interests) and he could not obtain that right by joining with him one who ultimately might have had (if he had lived) a vested interest in the remainder but in fact never did. Since the Court did not have authority to grant this relief its judgment is void.

(Gray v. Clement, 286 Mo. 100, 227 S. W. 111.) We, therefore, hold that the judgment of partition in the 1911 suit was void as to the defendants in this case.

Plaintiff further contends, since the will of Rubin Hill was not recorded until April 5, 1939, that he and his predecessors in title had no notice of its terms and were not bound by it. However, the Will was probated in 1905 and was set out in full in the petitions in both of the partition suits, upon which plaintiff relies, and the fact of the Will and the effect of its terms were set forth in the decrees. Therefore, we must hold that plaintiff and his predecessors in title necessarily had notice of the Will and its terms.

Plaintiff filed a motion to dismiss the appeal on the grounds that the appellants' brief does not contain a jurisdictional statement, does not concisely and fairly state the facts without argument, and does not specify any allegations of error. (Supreme Court Rule 1.08.) There is no jurisdictional statement, as the rule contemplates, but the first paragraph of the brief reveals that title to real estate is involved and it therefore clearly appears that jurisdiction of the appeal is properly in this Court. (Const. Mo., Art. 5, Sec. 3.) [339] The appellants' statement of facts and the "points relied on, which shall specify the allegations of error" are far from models but are not so deficient or inadequate as to compel a dismissal of the appeal (Jackson v. Thompson, 358 Mo. 1001, 218 S. W. (2d) 97; Cruce v. Gulf, Mobile & Ohio R. Co. 358 Mo. 589, 216 S. W. (2d) 78, 82); and the motion to dismiss, which was taken with the case is overruled.

The judgment is reversed and the cause remanded with directions to determine the interests of the parties in accordance with the views herein expressed. All concur.