Charles Edwards MOORE and Mary Taylor Moore, by Charles Edwards Moore, her Guardian, in their own behalf and as representatives of all that class of persons who may, upon the death of the life tenant, Paul Handy Moore, be and become heirs of the body of Paul Handy Moore, Respondents,

v.

Paul Lee MOORE and Stephen Moore, Appellants,

Joella Moore, Margaret Moore Thurmond, and Joella Moore and L. D. Joslyn, Trustees under the Will of Margaret S. Moore, deceased, and Paul Handy Moore, Defendants.

No. 47336.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Joslyn & Joslyn, L. D. Joslyn, T. B. Russell, Charleston, for appellants.

Blanton & Blanton, Sikeston, for respondents.

HOLLINGSWORTH, Judge.

This is an action to quiet title to approximately 520 acres of land in Mississippi County, Missouri, as described in the petition and judgment rendered herein. Plaintiffs presently are the only living children and heirs apparent *of the body of Paul Handy Moore,*[1] who was born in 1898 and is still living. As such, plaintiffs, in their own behalf and as representatives of the class of those who may become the lawful heirs of the body of Paul Handy Moore, instituted this action to quiet the title devised in remainder to the heirs of Paul Handy Moore's body by the will of their

---

1. All emphasis shown herein is supplied.

great-grandfather, Joseph C. Moore. Defendants, Paul Lee Moore and Stephen Moore, alleged that the title contingently devised in remainder to the heirs of the body of Paul Handy Moore under the will of Joseph C. Moore had been foreclosed and sold in 1925 for delinquent taxes, pursuant to a decree of the Circuit Court of Mississippi County, and that they, as successors in the title of the purchaser at the tax sale, had become and were the fee simple owners of the land.

Plaintiffs' action expressly challenged the validity of that sale on two grounds: (1) the tax suit and tax deed were fraudulent and void in that the tax proceedings resulting in said tax deed were instituted at the instigation and request of the defendant Paul Handy Moore who, collusively and with the full knowledge of Paul Byrd Moore, the purchaser at said sale, sought to eliminate the contingent remainder interest of the heirs of the body of the said Paul Handy Moore, and (2) the suit to foreclose the tax lien was not brought in such a manner as to foreclose their interests in the land and the tax deed did not divest them thereof. The trial court found the issues in favor of plaintiffs and entered judgment accordingly, from which the aforesaid defendants have appealed.

The common source of title is Joseph C. Moore, who, by his will drawn in 1908 and admitted to probate in Mississippi County, Missouri, at some time prior to 1911, devised some 1431 acres of land, including the land in issue, to his grandson, Paul Handy Moore, "and to the heirs of his body." The will also named Paul B. (Byrd) Moore, son of the testator, as executor of testator's estate and as "trustee or curator" for Paul Handy Moore, and directed Paul B. Moore, as "trustee or curator", to take control of the property devised to Paul Handy Moore (and the heirs of his body) and to manage it for his maintenance and education. The will further provided:

"My said grandson shall have no power to sell or otherwise dispose of any of the tracts of land I have herein devised to him and to the heirs of his body, but at his death should he leave no heirs of his body living, it is my will and desire that all the property, real and personal, herein devised to him shall descend to and be equally divided ½ to the children of my sons James Handy Moore, deceased, and the other half to Paul B. Moore then living and the heirs of the bodies per stirpes of such as may be dead, if any."

(Additional contingencies are also set forth in the will but are immaterial to the issues presented under the pleadings.)

Upon the death of the testator, Paul Byrd Moore (frequently referred to herein as "Paul B.") qualified and thereafter acted as executor of the estate and as "trustee or curator" of the property devised to Paul Handy Moore (frequently referred to herein as "Paul Handy") and the heirs of his body.

Paul Handy is the son of Mr. and Mrs. Coombs, the latter, Nellie Moore Coombs, being a daughter (now deceased) of Joseph C. Moore. At an early age, in 1905 or prior, Paul Handy entered the home of his uncle, Paul B. Moore, assumed the family name of Moore in lieu of the name of Coombs, and made his home with and in effect became a member of the family of his uncle, Paul B. A close confidential and family relationship thereafter existed between him and his foster parents and their children. Paul B. handled Paul Handy's affairs until he became of age in 1919. *Paul Handy did not marry until 1932; and his children, plaintiffs Charles Edwards and Mary Taylor, were not born until, respectively, March 27, 1934, and May 30, 1938.*

In 1924 Paul Handy had become indebted to Paul B. in excess of $28,000 and was also heavily indebted to the Charleston-Mississippi County Bank, of which Paul B. was chairman of the board and George Shelby was executive vice-president and cashier. Both the officers of the bank and Paul B.

were insistent that Paul Handy's indebtedness be liquidated. In December, 1924, Paul Handy executed, acknowledged and delivered to Paul B. an "Agreement", insofar as material, reciting:

"That I, Paul H. Moore, of the County of Mississippi and State of Missouri, acknowledging myself in debt to Paul B. Moore in the sums of the following promissory notes duly executed to him for money consideration, to wit:
(Here follows a list of seven notes, of the total principal sum of $20,469.-50 bearing varying interest rates of 7 and 8 per cent, all of which were past due.)

"Do hereby agree and bind myself in consideration of said indebtedness to pay to Paul B. Moore beginning Jan. 1, 1925, such sums of money that may be the net earnings on the following tracts of farming lands owned by me in Mississippi County, Missouri, to-wit:

(Here follow descriptions of 19 tracts of land, aggregating some 1871 acres, including the 1431 acres devised by Joseph C. Moore to him and heirs of his body.)

\*    \*    \*    \*    \*    \*

"I am to continue in charge of said lands, managing their cultivation and the sales of the products and give an accounting to Paul B. Moore each year until this agreement becomes void by having my indebtedness to Paul B. Moore discharged."

Paul Handy testified: In 1925, he and Paul B. discussed the matter of Paul Handy's indebtedness and the possibility of getting the land which had been devised to Paul Handy (and the heirs of his body) "released" from the entailment set forth in the will and "going about it in a legal way, if possible, through the bringing of a tax suit." Paul B. agreed with that suggestion. Paul Handy then discussed the matter with George Shelby and with J. C. McDowell and his law partner, Mr.

Boone, who were attorneys for the tax collector. Following those discussions, Paul Handy consulted the law firm of Gallivan and Finch at New Madrid. He was accompanied by Mr. Shelby on one of these trips. At Paul Handy's request, Gallivan and Finch prepared the petition to be used in the tax suit and it was signed and filed by Mr. Boone of the firm of Boone and McDowell. Paul B. Moore provided Paul Handy with the funds with which to pay the purchase price, $6,496.81, for which the land was sold at the sale in foreclosure under the judgment rendered in that suit.

On cross-examination, Paul Handy testified: He was financially embarrassed in 1925 but thought he could have paid his taxes. He talked to Paul B. in the early part of 1925 "about the entailment." Paul B. mentioned it in 1924. "There was a plan not to pay the taxes." He and Paul B. discussed it right along. The plan was not something "hatched up over night. It involved quite a lot of conversation and plans and arrangements that might be made."

"Q. You didn't pay the 1922 or 1923 taxes? A. That is right.

"Q. You say you could have borrowed the money. Isn't it a fact that in 1925 when this land was sold at the tax sale your credit at the bank had been exhausted? A. I don't know.

"Q. Isn't it a fact that you went to St. Louis among other places and attempted to borrow money along about that time and you couldn't borrow it due to this entailment on this land? A. Yes. I took the abstract to St. Louis to the Title Guaranty Company and they said there was some sort of collusion and they couldn't lend money on the land involved."

Further cross-examination developed the fact that practically everything of substantial value owned by Paul Handy (other than his life estate in the lands devised to him) was mortgaged and that he had stated to others that he could not pay his taxes, but

he continued to insist that actually he "could", "thought he could", "probably could" have paid the 1922 and 1923 taxes (for which foreclosure was threatened) had he desired to do so.

J. C. McDowell testified: He and James A. Boone were engaged in the practice of law in Charleston under the firm name of Boone and McDowell for a period of about three years beginning January 1, 1925, during which time they were attorneys for the collector of Mississippi County. Following demand for payment of the taxes due for the years of 1922 and 1923, they, as attorneys for the collector, filed the tax suit in 1925 against the land devised to Paul Handy and the heirs of his body under the will of Joseph C. Moore. Prior to filing that suit, Paul Handy discussed the matter with the witness. Paul Handy owed five or six thousand dollars in back taxes. The land was entailed and he wanted to bar the entail by a tax suit and "he asked me if I would bring the suit so as to do that, so that he could get the title in his own name. I at that time I knew that I couldn't sell it for taxes and give him a title, because, if I did, it would be just the same shape it was before; if he paid the taxes by suit it wouldn't make any difference. And he asked me if I would permit Finch and Gallivan, a firm of lawyers up in New Madrid County, * * to assist me in bringing the suit so as to bar the entail estate. And I agreed to that."

"Q. To whom was the deed made at that execution sale, do you recall? * * * A. * * * It seems that I took the deed to the land. Of course I had no interest in the land; I was merely selling it, the same was merely to bar this entail. Well, the taxes were to be paid already; this sale was just a formality.

"Q. Did you yourself actually furnish any of the consideration named in—A. On, no, I furnished no, none of the consideration."

On cross-examination, Mr. McDowell testified: The farm depression in Mississippi County began to get "bad" in 1925 and continued to grow worse, followed by numerous bank failures, and caused the sale of much land for taxes:

"Q. And, as an attorney, would you say that he [Paul Handy] was, would be or would not be able to borrow money on that land at that time? A. Oh, I think, Tom, he could have borrowed money on his life estate, far more than he owed taxes. * * *

"Q. —borrowed on the life estate or, if he had conveyed it, he would have to convey merely the life estate? A. Yes. Now the land that Mr. Moore owned, Paul Handy Moore owned * * * was high type land right here close to town, and was of considerable value even at that time.

"Q. You speaking now of the land southwest of town, or are you also including the Henson land? A. Well, he owned a lot of land. The Henson land is in the same condition as this land's in, if I recollect. It was not probably as valuable a land, though, as this land near Charleston. That land that you're talking about now.

"Q. Do you recall who was present at the time you discussed that with Paul Handy, Judge? The first time? A. No, I do not.

"Q. Was George Shelby— A. George Shelby was present—he had been present, but I don't know whether he was present during these times; that's been 30 years ago. I wouldn't say. I know I've discussed it with George Shelby many times, whether with Paul Handy or away from him.

* * * * * *

"Q. Now, I believe you said awhile ago that when the land was sold, you purchased it for the county. Is that correct? A. Yes, I purchased it, I purchased it under an agreement with them, after having talked to Finch and

Gallivan and Paul Handy and myself, it had to be purchased by somebody else besides Paul Handy.

"Q. Well, when you say them, now, will you say who 'them' includes? A. Yes, I'll say it included Paul Handy's attorneys; they were in on the matter."

George Shelby, aged 66 years, testified: Prior to 1925, he was connected with the Mississippi County Bank and Paul B. Moore was its president. In 1925, that bank consolidated with the Charleston Bank, becoming the Charleston-Mississippi County Bank. He, Shelby, was made its cashier and Paul B. Moore was chairman of the board. Paul Handy owed the bank a substantial amount of money. "The Colonel" (Paul M. Moore) had been criticizing him and some other members of the board had, and they felt like he should make some arrangement to take it out. About one year prior to institution of the tax suit, the witness went with Paul Handy Moore to New Madrid to consult with the law firm of Gallivan and Finch. Paul Handy wanted to see how he stood with reference to the title and "the entailment on the land, if there was any way he could borrow money on it." "We talked at some length." Gallivan and Finch did not talk "too favorable." Following the tax sale, Paul Handy paid the bank and also paid his indebtedness to Paul B. After the tax sale and delivery of the tax deed to J. C. McDowell, the latter deeded the land to the witness, "as an accommodation." He, Shelby, then conveyed 873 acres of the land, including the land in issue, to Paul B. Moore, for which he, Shelby, received no consideration.

On cross-examination, Mr. Shelby testified: He was and is a close friend of Paul Handy. Mr. Blanton, counsel for plaintiffs in the instant action, and Paul Handy talked with him. The witness told them that he had little recollection about the matter but that he knew Paul Handy was then "broke" and could not pay his taxes. Paul Handy agreed. In 1925, farming conditions were bad and kept on getting worse.

Upon sale of the land in foreclosure of the taxes and payment of the amount of the bid and costs, to wit: $6,496.81, with funds furnished by Paul B. Moore, the sheriff, on October 30, 1925, conveyed the land to J. C. McDowell, who, as stated, by quit-claim deed dated December 3, 1925, conveyed it, for a recited consideration of "one dollar and other valuable considerations", to George Shelby.

On December 1, 1925, Paul Handy prepared and delivered to Paul B. Moore a document found among the latter's papers following his death and produced by his daughter, pursuant to a subpoena duces tecum, reading as follows:

"Purchase of 873 acres of P. H. M.—'Home Farm' —Land Dec. 1st by P. B. Moore—1925—Trustee.

| | | |
|---|---|---|
| 873 Acres at $70.00 | | $61,110.00 |
| Payment in notes | | 59,961.75 |
| Balance by check from P. B. M. to P. H. M. | | $ 1,148.25 |
| Notes | $59,961.75 | |
| Cash | 1,148.25 | |

Total Received 61,110.00

| Payments | |
|---|---|
| Scott Garage Note | 11,120.30 |
| Hutson Grain Co. | 2,804.57 |
| A. V. Goodin | 4,898.25 |
| Roe Shelby | 3,484.02 |
| Anderson (Peoples) | 8,707.52 |
| | 31,014.66 |
| P. H. Moore notes | 28,947.09 |
| | 59,961.75 |
| Check | 1,148.25 |
| | $61,110.— |
| Back Taxes" | |

The 873 acres above described include the land in issue. Translated, in accord with other testimony in the case, that document reveals that on December 1, 1925, Paul Handy had sold (or agreed to sell) the 873 acres to Paul B. for $70 per acre, a total of $61,110, the consideration being or to be paid by notes totaling $31,014.66 executed or assumed by Paul Handy, $28,-947 of notes owed by him to Paul B. and cash to Paul Handy in the sum of $1,148.25.

On December 12, 1925, George Shelby, who still held the record title to all of the land sold at the tax sale, conveyed the 873 acres by quitclaim deed to Paul B. Moore, trustee for Margaret S. Moore (the wife of Paul B.) for a recited consideration of "Sixty Five Thousand Dollars and other Valuable Considerations," and on the same day by quitclaim deed for a recited consideration of "One Dollar and Other Valuable Considerations" conveyed to Paul Handy other of said lands (known as the Henson farm) theretofore sold for taxes.

The next transaction shown between Paul Handy and Paul B. is an "Agreement" signed by Paul Handy Moore and Paul B. Moore, Trustee, which was found among the latter's papers and was produced by his daughter, pursuant to a subpoena duces tecum, to wit:

"This agreement made and entered into by and between Paul B. Moore, Trustee for Margaret S. Moore his wife, and Paul Handy Moore, both of Charleston, Mississippi County, Missouri, this 3rd day of August, 1926, Witnesseth:

*"Whereas Paul Handy Moore has caused, through due process of law, advertisement and tax sale, loss in ownership of the following described lands,* being, lying and situate in the County of Mississippi and State of Missouri: (Here follows description of the 873 acres.)

"And whereas, said lands were bought in a tax sale during the October term of Circuit Court 1925 by J. C. McDowell who, joined by his wife deeded said lands to George U. Shelby who in turn, joined by his wife, deeded said lands to Paul B. Moore, Trustee for Margaret S. Moore, his wife, for the following considerations plus taxes due, to wit:

| | |
|---|---|
| "Real Estate mortgage note Scott & Bond Garage | $11,120.30 |
| "        "        "        S. M. Shelby, Dwelling | 3,484.02 |
| "        "        "        Jas. Anderson, (Peoples Bank) | 8,707.52 |
| Hutson Grain Co. note assumed by A. V. Goodin | 2,804.57 |
| A. V. Goodin note and interest | 4,898.25 |
| Paul Handy Moore notes to P. B. M. and wife. | 28,947.09 |
| Check to Paul Handy Moore | 1,148.25 |
| | $61,110.00 |

"Therefore, Paul B. Moore, Trustee for Margaret S. Moore, by agreement with Paul Handy Moore, former owner of above lands, binds himself as Trustee for a period of ten years, next succeeding December 1st, 1925, to convey back to Paul Handy Moore former owner, clear of encumbrances of every nature, the lands herein set out for a cash consideration (or the equivalent) of $61,110.00, plus back taxes paid, at any time during said period of ten years that said Paul Handy Moore may find himself in position to make such recovery.

"The said Paul Handy Moore acknowledges receipt of the above described securities as full consideration for the lands herein described."

Paul B. Moore died in 1932. Some time shortly prior to his death, he sent to his daughter a handwritten statement (Plaintiff's Exhibit 1) which, pursuant to subpoena duces tecum, she produced at the trial. Insofar as material, it reads as follows:

"The Paul Handy Moore land of 873 acres was entailed by his grandfather. The suit for back taxes, costs

and penalties was drawn by Finch & Gallivan of New Madrid for the local tax lawyers, Boone & McDowell, in 1925 for $6156.37. Atty. McDowell * * * bought in the property, and later he deeded same to Geo. U. Shelby, who *in turn* deeded it to me as trustee for my wife, Margaret S. Moore, for consideration of $61,110.00 plus above back taxes and 1924 & 1925 taxes. *The notes used as consideration belonged to my wife as part of her accumulated inheritance.*

\* \* \* \* \* \*

"I am sending you by registered mail the abstract of these lands wherein *you may read my Father's will*, the Executor's settlement, the draft of the suit for taxes, sheriff's returns, Court orders, Sheriff's deed to Atty McDowell, who bid in the property, McDowell & wife's deed for same to Geo. U. Shelby, deed of Geo. U. Shelby & wife to Paul B. Moore Trustee. *All known heirs had full notice of the transaction and there were no objections raised nor filed.* This suit was brought for 1922 & 1923 taxes, and I also paid 1924 & 1925 taxes, latter amounting to over $4000, which were due when the property was deeded to me as trustee."

In 1945, Paul Handy sold the Henson farm of some 300 or more acres, which had been deeded to him by George Shelby following the tax sale, to Ed Marshall. After Paul Handy's children attained their majority, they also executed deeds to the Henson farm to Mr. Marshall. In 1946, Joella Moore and Margaret Moore Thurmond, daughters of Paul B. Moore, who had been deeded some of the 873 acres of land by their mother, Margaret S. Moore, conveyed some 300 acres of the land included in the August, 1926, agreement to Paul Handy. Margaret S. Moore died in 1945. By her will she devised the 520 acres of land in issue in trust to her two grandchildren, the appellant-defendants herein. Thereafter, the trustee conveyed the land in issue directly to them and the trust was terminated.

When the instant action was brought on August 1, 1955, Paul Handy Moore was included as a party plaintiff. Thereafter, counsel for plaintiff, for reasons not here material, withdrew from the case and new (the present) counsel was employed by the present plaintiffs pursuant to an order of the probate court of Mississippi County. (At that time Charles Edwards Moore had become of age but his sister, Mary Taylor Moore, was yet a minor.) It was the opinion of present counsel that the interests of Paul Handy were adverse to those of his children, the present plaintiffs. Paul Handy thereupon withdrew as a party plaintiff and present counsel filed an amended petition making him a party defendant. Paul Handy thereupon employed other counsel and entered his appearance but filed no answer.

The trial court announced, in substance, the following finding of facts and conclusions of law:

Paul Handy Moore owed plaintiffs (respondents) the duty to protect the contingent interests of the heirs of his body in the lands in issue. He breached that duty by conspiring to have the lands sold for taxes in an attempt to destroy their contingent remainder interests and to vest title in fee thereto in himself. The tax sale proceedings were instituted at the instigation and request of Paul Handy with the knowledge and consent of Paul B., from whom Paul Handy procured the funds to pay the bid at the sale and between whom there existed a close confidential and family relationship. Paul B. Moore, J. C. McDowell and George U. Shelby were straw parties for Paul Handy in receiving and executing the deeds made in connection with the ultimate transfer of the lands to Paul B. Moore, Trustee for Margaret S. Moore. The interests of plaintiffs in the instant action, either in their own behalf or as members of the class of those who might become the heirs of the body of Paul Handy Moore, were not actually or virtually represented by any of the defendants in that action. In fact, the interests of the defend-

ants in that action were adverse to the interests of plaintiffs and the members of their class. O. W. Joslyn was appointed as guardian ad litem solely for the *minor* named and unknown defendants and answered solely in their behalf. These plaintiffs, not having been born until some nine years subsequent to the sale of the lands for taxes, were not and could not be represented under the designation of unknown *minor* defendants in said action. The interests of these plaintiffs and those whom they represent were not foreclosed by the tax proceedings.

The judgment declared the fee simple title to the lands in issue to be vested in plaintiffs "as tenants in common and as representatives of all that class of persons who may, upon the death of the life tenant Paul Handy Moore, be and become heirs of the body of Paul Handy Moore, * * * subject to the life tenancy in said property now vested in Paul Lee Moore and Stephen Moore as tenants in common, for and during the natural life of Paul Handy Moore and after the death of said Paul Handy Moore, then the entire fee simple title shall vest in Charles Edwards Moore and Mary Taylor Moore, and in any other heirs of the body of Paul Handy Moore who may hereafter be born to him, as tenants in common, per stirpes and not per capita; * * *."

Defendants contend that the trial court erred in setting aside the tax deed on the ground of fraud; that there is no clear, cogent and convincing evidence that Paul Handy, the life tenant, failed by design to pay the taxes; that the actions of Paul Handy and Paul B. are as consistent with honesty as dishonesty; and that all of the credible evidence tends to show the sale was the result of farming conditions in general and Paul Handy's financial condition in particular.

■ Although the record does not so show, we may assume that Paul Handy's indebtedness to the bank and to Paul B. was due in part to farming conditions.

However, that fact, if it be the fact, begs the question. When the testimony of Paul Handy, J. C. McDowell and George Shelby is considered and weighed in connection with the events that transpired before and subsequent to the sale, we think it clear that in 1925 Paul Handy did designedly fail to pay the delinquent taxes due thereon for the express purpose of causing the land to be sold in foreclosure and conveyed by mesne straw conveyances to Paul B. free of entailment for an actual consideration of $61,110, which sum, pursuant to an understanding between them, was to be used to liquidate Paul Handy's personal indebtedness to Paul B. and to the bank.

Plans for accomplishment of that purpose were discussed and arranged between Paul Handy and George Shelby and between them and Mr. McDowell and Gallivan and Finch. Paul Handy testified that he and Paul B. also discussed the matter at length and that Paul B. agreed to it. There was a close confidential relation between him and Paul B. That they would discuss it was but natural and, if the plans were to be accomplished, necessary. Prior to the sale, Paul B., in accordance with the plan, made available to Paul Handy the funds with which to pay the purchase price and costs. Following the sale, but prior to obtaining record title, by way of deeds from the two straw parties, Paul B., on December 1, 1925, procured from Paul Handy and retained in his files a memorandum showing "purchase of 873 acres of P. H. M. * * * by P. B. Moore * * * Trustee," and further setting forth a list of the items involved in the sale. On August 3, 1926, in a written agreement signed by both Paul Handy and Paul B., it was solemnly declared that: "*Whereas Paul Handy Moore has caused, through due process of law, advertisement and tax sale, loss in ownership of*" the 873 acres. The evidence herein, realistically considered, refutes beyond question, we think, the contention that Paul B. had no knowledge of or did not consent to, approve of, and knowingly participate in the action taken

in attempting to free the land of the contingent remainders devised under the will to the heirs of Paul Handy's body.

■ Defendants further contend, however, that the trial court erred: (1) in finding that Paul B. was a straw man for Paul Handy for the reason that the evidence clearly shows that Paul B. purchased the lands for the benefit of Margaret S. Moore, whose funds were employed for the purpose; and (2) in ignoring the defense that she was a bona fide purchaser for value for the reason that plaintiffs' exhibit 1 shows her funds were used and there is no showing that she participated in or knew of any fraud on the part of Paul Handy.

As early as December, 1924, Paul B. had accepted from Paul Handy an instrument acknowledging the latter's *indebtedness to Paul B. Moore* on seven promissory notes, in which *his indebtedness to Paul B.* on those notes is stated four different times. The answers filed herein merely plead that Paul B. Moore "was a bona fide purchaser for value without notice of any infirmities in the title" and that Margaret S. Moore took title without notice of any infirmities in the title. The contention that Margaret S. Moore was a bona fide purchaser for value is predicated solely upon the statement signed by Paul B. (plaintiffs' exhibit one) and delivered to his daughter in 1931, wherein he said, "The notes used as consideration (the $61,110.00 plus taxes, delivered to Paul Handy as part consideration for the 873 acres) belonged to my wife as a part of her accumulated inheritance." That statement, considered in the light of the other facts and circumstances in the case, could well have been made for a self-serving purpose. But, assuming that the notes received by Paul Handy when the land was conveyed to Paul B. as trustee for Margaret S. Moore represented money that originally came in whole or in part from her "inheritance", the evidence further clearly shows that Paul B. had handled these funds, either as his own or as her

agent, which, in the absence of evidence to the contrary, warrants and leads to the finding that they (husband and wife) confided in each other and that she had such knowledge of the transactions as he possessed. Dougherty v. Strong, 313 Mo. 27, 281 S.W. 445, 449; City of Warsaw v. Swearngin, Mo., 295 S.W.2d 174, 183.

■ Although Paul B. ostensibly and allegedly took title to the lands as a "bona fide purchaser for value" as trustee for Margaret S. Moore, yet, after doing so, he executed an agreement to reconvey them to Paul Handy upon payment of the purchase price, plus back taxes, at any time within ten years. In other words, that instrument indicates that Paul Handy and Paul B. actually treated the so-called "bona fide purchase" by Paul B. as a straw conveyance executed for the purpose of eventually enabling Paul Handy to obtain title in fee to the lands. Although Paul Handy never redeemed the lands, he and Paul B. so manipulated the record title thereto as to receive the benefit of the full value thereof after freeing them, as they thought and intended, from entailment to the heirs of the body of Paul Handy. Consequently, the trial court did not err in characterizing Paul B. as a "straw party" to the instruments received and executed by him in the course of these manipulations.

■■ It was the duty of Paul Handy, as life tenant, to preserve and protect the remainder interests of plaintiffs and those whom they represent, his relationship to them being in a sense that of a fiduciary. Duffley v. McCaskey, 345 Mo. 550, 134 S.W.2d 62, 126 A.L.R. 853; Souders v. Kitchens, 345 Mo. 977, 137 S.W.2d 501, 502 [1–3]; Muzzy v. Muzzy, 364 Mo. 373, 261 S.W.2d 927, 932 [5]. Certainly he had no legal or equitable right designedly to fail to pay the taxes and, in collusion with Paul B., thereby to cause the sale in foreclosure of the lands for taxes, title to which (subject to his life tenancy) contingently was vested in the heirs of his body, primarily for the purpose of depriving them of their

estate in said lands and procuring the whole of the funds paid by Paul B. for the title in fee at such sale in foreclosure for the personal benefit of himself and Paul B. Yet the facts in this case show that is exactly what he did. Under the circumstances here shown, it must be held that Paul B. Moore and Margaret S. Moore became trustees ex maleficio of the contingent remainder interests of the heirs of the body of Paul Handy. Fountain v. Starbuck, Mo., 209 S.W. 900, 901; 17 A.L.R., Annotation, 1384, 1401; 144 A.L.R., Annotation, 769, 803; Mathews v. O'Donnell, 289 Mo. 235, 233 S.W. 451, 459; Wicoff v. Moore, Mo., 257 S.W. 474, 476; Muzzy v. Muzzy, 364 Mo. 373, 261 S.W.2d 927, 932. And, likewise, of course, the appellant-defendants, being the devisees and voluntary takers of the title of Margaret S. Moore, hold said title subject to all of the infirmities herein shown.

■ Under "points relied on", defendants contend that the court erred in admitting the testimony of J. C. McDowell as to conversations with Paul Handy out of the presence of Paul B. They do not develop that contention in their argument and the case cited by them, Louisiana Lumber Co. v. Burbridge, Mo.App., 220 S.W.2d 760, does not support them. Plaintiffs do not claim under either Paul Handy or Paul B. To the contrary, they claim as devisees of Joseph C. Moore and they plead and prove that Paul Handy and Paul B. were guilty of fraudulent collusion in attempting to deprive them of their rights as such devisees. Clearly, plaintiffs had the right to prove from any source available, absent claim and showing of privileged communication, any acts done or declarations made by either Paul Handy or Paul B. in the furtherance and during the existence of that conspiracy. 31 C.J.S. Evidence § 362, p. 1138; Kennish v. Safford, 193 Mo.App. 362, 184 S.W. 923. Moreover, a careful reading of Mr. McDowell's testimony shows that he testified to no conversation that he had with Paul B. Neither did he testify

to any statement made to him by Paul Handy with reference to any connection that Paul B. had with the plans. The contention is without merit.

The conclusions herein reached make it unnecessary to consider other contentions made by defendants.

The judgment of the trial court is affirmed.

All concur.