William Blair HUGHES and Mary Elizabeth Mosby, Plaintiffs-Respondents,

v.

Bernita NEELY, W. M. Neely, Lois Neely, Margaret E. Hughes, J. B. Hughes, Thomas G. Douglass, Trustee for Margaret E. Hughes, under Will of James M. Douglass, J. B. Hughes, Trustee for Margaret E. Hughes, M. Frances Mayfield, Allen M. Douglass, J. Mott Douglass, and T. G. Douglass, Guardian and Curator for Margaret E. Hughes, N.C.M., Defendants,

Bernita Neely, W. M. Neely and Lois Neely, Appellants.

William Blair HUGHES and Mary Elizabeth Mosby, Plaintiffs-Respondents,

v.

Brooxie Nell SMITH, Ella Parish, Margaret E. Hughes, J. B. Hughes, Thomas G. Douglass, Trustee for Margaret E. Hughes under Will (Deed) of James M. Douglass, J. B. Hughes, Trustee for Margaret E. Hughes, M. Frances Mayfield, Allen M. Douglass, J. Mott Douglass, Thomas G. Douglass, and T. G. Douglass, Guardian and Curator for Margaret E. Hughes, N.C.M., Defendants,

Brooxie Nell Smith, Appellant.

Nos. 47287, 47288.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion Feb. 8, 1960.

1

James V. Billings, Bradley and Noble, John W. Noble and Charles M. Cable, Kennett, for appellants.

McHaney & McHaney, by William H. Billings, Kennett, for respondents.

HYDE, Presiding Judge.

These two cases are actions to cancel two judgments entered in the Circuit Court of Pemiscot County in 1930, which terminated trusts in separate tracts of land, vested title in the life beneficiary of the trusts and divested title of all contingent remaindermen. These cases, involving the same issues as to validity of the 1930 judgments, were consolidated for trial and the court entered decrees finding the 1930 judgments null and void and ordered them set aside and cancelled. The defendants, who have appealed, were subsequent purchasers from the life beneficiary. Plaintiffs are children of the life beneficiary, who is still living, and are contingent remaindermen.

The land involved is in Dunklin County; the suits to terminate the trusts were commenced there and went to Pemiscot County on change of venue. In 1918, all the land involved was owned by James M. Douglass who then made a will, Paragraph Fifth of which established a trust in the land now claimed by the Neelys, defendants-appel-

lants (hereinafter referred to as the Neely 50 acres), with his son, Thomas G. Douglass, as trustee "in trust for the use and benefit of my beloved daughter Margaret E. Hughes for the term of her natural life at her death remainder to the heirs of the said Margaret E. Hughes, free from the claims or interest, if any, of the now living husband of Margaret E. Hughes." The will further provided: "The said Thos. G. Douglass as trustee for the said Margaret E. Hughes shall have full power and control of the interest of the said Margeret E. Hughes in said real estate, shall collect the rents thereon, pay the taxes, insurance, assessments, repairs and otherwise manage said property for the said Margaret E. Hughes and shall pay over to the said Margaret E. Hughes, the net income from said property in such amounts and installments as the said trustee shall deem for the best interests of the said Margaret E. Hughes; and said trustee, if in his judgment it appears to be to the interest of the said Margaret E. Hughes, shall have full power with the joinder of the said Margaret E. Hughes to mortgage or sell the interest of the said Margaret E. Hughes in said real estate." We note that the will of James M. Douglass also left specifically described land to each of his other four children (three sons and a daughter) so that each had only a life estate, each devise being: "I will, bequeath and devise to my beloved son (naming him) for the term of his natural life, and at his death the remainder to the heirs of said (naming him) the following described real estate."

In 1919, James M. Douglass established by deed an intervivos trust in the land now claimed by defendant-appellant Smith (hereinafter referred to as the Smith 40 acres) with his son T. G. Douglass as trustee. The deed conveyed the land to "T. G. Douglass, his executors, administrators, and successors, in trust, and confidence, however, for the uses and purposes as hereinafter set out, and for none other, to-wit: For the sole use and benefit of the said Margaret E. Hughes during her na-

tural life, and at her death to go direct to the heirs of her body." The deed provided for the land to "go direct to the heirs and legal representatives" of the donor if Margaret E. Hughes "should die leaving no children, heirs of her body." The deed also provided for the trustee "to have active charge and control of the lands above conveyed during the life time of the said Margaret E. Hughes, and to receive the rents and profits and issues arising from or growing out of and from said lands, and after the payment of the regular annual taxes and repairs and necessary expenses for the proper upkeep and care of the said lands, herein conveyed each year, and after deducting a reasonable compensation for his services * * * turn over and pay to the said Margaret E. Hughes the net annual income from the lands herein conveyed for her sole use and benefit from year to year during her natural life." The deed further provided that "in the event that it should become necessary, in the judgment of the said T. G. Douglass, to mortgage any part or all of the lands herein conveyed for the use and benefit of the said Margaret E. Hughes during her life time, the said T. G. Douglass is hereby authorized by and with the written consent of the said Margaret E. Hughes and witnessed by two or more competent witnesses, to mortgage such part of the real estate herein conveyed and to such an amount as he may deem necessary for the proper care and support of the said Margaret E. Hughes at the time." The settlor retained a life estate in this land.

It was provided in both the will and the deed that, if T. G. Douglass should fail or refuse to act, the settlor's son, J. Mott Douglass, should act as trustee. James M. Douglass died February 25, 1921; his wife Belle Douglass survived him but died in 1931. His daughter and three sons, named as defendants herein, also survived him. T. G. Douglass took charge of the land as trustee and managed it until October 27, 1925, when he resigned. J. Mott Douglass refused to act and J. B. Hughes, husband of the life beneficiary, was appointed trustee in an ex parte proceeding in the Circuit Court of Dunklin County and took charge of the land. There was other land in each trust. In 1921, T. G. Douglass, as trustee, with Margaret E. Hughes and her sister, made a first mortgage for $5,000 and in 1923, a second mortgage for $4,500, both to the Prudential Life Insurance Company, which covered land herein involved and other land.

█ Plaintiffs are the son and daughter of Margaret E. Hughes and J. B. Hughes. The defendants, other than the appealing defendants, are the other daughter and the three sons of the settlor of the trusts. Plaintiffs' petition herein in each case was in two counts; one count was to declare void the decree entered July 31, 1930, in Case No. 7003 in the Circuit Court of Pemiscot County and the other to set aside the judgment, also entered July 31, 1930, in Case No. 7002 in that court. Margaret E. Hughes and J. B. Hughes were plaintiffs in these 1930 cases and the defendants were the other children of the settlor of the trusts and William Blair Hughes, one of the plaintiffs herein, who was the son of Margaret E. Hughes and J. B. Hughes. The other plaintiff herein, Mary Elizabeth Mosby, was not born until after the decree and judgment of July 31, 1930. Case No. 7002 was a statutory suit to ascertain and determine title (see Sec. 527.150; statutory references are to RSMo and V.A. M.S. unless otherwise stated); and the decree found Margaret E. Hughes the owner in fee simple of both tracts of land herein involved. However, both suits were between the same parties, heard on the same day, on the same record, involved the same subject matter, with the same guardian ad litem appointed on the day of the trial to represent the minor defendant, William Blair Hughes, one of the plaintiffs herein. It affirmatively appears from the record that Margaret E. Hughes had no claim to the land except under the will and deed of her father, James M. Douglass, creating the trusts involved,

which were set out in full in the petition in suit No. 7003 and were therefore before the court when the decree in Case No. 7002 was entered, and conclusively show that she did not have the title declared therein. The rule as to judicial notice of records in other cases is argued by the parties (see 20 Am.Jur. 104–106, Secs. 86–87; 31 C.J.S. Evidence § 50, p. 624); but in this situation, the cases must be considered as consolidated for trial with the same facts, issues and pleadings applicable to each. See Tracy v. Sluggett, 360 Mo. 1120, 232 S.W.2d 926, 936, and authorities cited; see also 1 Am.Jur. 476–480, Secs. 92–95; 1 C.J.S. Actions § 112b(1), p. 1368; Wiman v. First Christian Church of Mayfield, 273 Ky. 821, 117 S.W.2d 989.

The petition in Case No. 7003 contained two counts. Count I sought to have the trusts declared impossible of performance and the title to the land vested in fee simple absolute in Margaret E. Hughes. Count II sought to have the court construe the trust instruments and adjudge, declare and define the right, title and interest of each of the parties. In Count I the deed creating the trust in the Smith 40 acres and the part of the will creating the trust in the Neely 50 acres were set out in full. (They were incorporated by reference in Count II.) It was alleged that it was physically impossible for Margaret E. Hughes to again conceive and bear children. (Her daughter, plaintiff Mary Elizabeth Mosby, was born the next year, 1931.) It was stated that T. G. Douglass, as trustee, had executed two mortgages on part of the land; the first on account of taxes accumulated during the lifetime of the settlor, together with the necessity for obtaining money for the purpose of building a home for Margaret E. Hughes; the second on account of general financial conditions, and floods reducing the income of the land so that it did not produce enough to provide for Margaret E. Hughes and at the same time pay interest and taxes. It was also stated that her health failed making it necessary to expend large sums for doctor bills, hospital bills and traveling expenses and that her husband was unable to pay these because of his financial loss; that after the appointment of J. B. Hughes as trustee there was due on the mortgages $5,000, due on taxes and assessment $2,000, and due on other obligations $3,000; and that the land would be sold under the mortgages and tax judgments unless a long time loan could be made on the land, which J. B. Hughes as trustee could not procure because of the condition of the title.

It was also stated that it was the intention of the settlor to make ample provisions out of the net income of the land to care for Margaret E. Hughes during her life and at her death remainder to go to her children, but on account of economic conditions, floods and crop failures reducing the income from the land, which conditions could not be anticipated, "the said purported trust instrument herein cannot be performed as intended," and "having failed in its purpose it is therefore void"; and that if the trust instruments are not declared void and the land reverted back to the heirs of the settlor his intention will fail and be thwarted, Margaret E. Hughes will be deprived of her life estate and remainder will be lost. It was further alleged, as a reason for declaring the trusts void and the title to revert back to the heirs of the settlor "that the written instruments under construction cannot be performed and the intention of the donor, carried out, on the further account of the condition, terms, and restrictions contained therein being vague and indefinite and the true intent and meaning of the donor cannot be determined from the face of said instruments, and on the further account of the economic conditions of the country generally, * * * and on the further account of the weather conditions and excessive rains covering a period of six or seven years subsequent to the death of the donor, which produced floods and caused crop failures and reduced the income from the lands to such an extent they were not self sustaining, thus rendering it necessary to

encumber the lands, which has caused the accumulation of interest, and on the further account of increased expenses of the beneficiary under said instruments brought about by sickness, which facts could not and was not contemplated by the said donor."

The petition proceeded on the theory that if the trust was declared void and the title reverted to the heirs of the settlor, his children, then Margaret E. Hughes would be entitled to have title in fee simple to the land involved because the settlor had left by will or conveyed to his other children "large portions of real estate equal or greater in value than the real estate herein mentioned which bequests and conveyances were received and accepted by them as and for their full share in the estate." The decree found and recited the facts stated in the petition, found "that said instruments are vague and indefinite and the true intent and meaning of the donor cannot be determined from the face of said instruments and on that account said instruments cannot be performed"; and found, because of economic conditions, weather and floods reducing income, and because of bad health of the beneficiary increasing expenses, the trusts were impossible of performance. The decree declared the trusts cancelled and the title reverted and revested in the surviving heirs of the settlor and then finding that these heirs had received their full shares of the settlor's property and were making no claim to the trust land ordered that Margaret E. Hughes be vested with the title thereto in fee simple absolute.

Appellants contend that plaintiffs had no legal capacity to sue, being contingent remaindermen and the life tenant yet living; and also inconsistently that plaintiffs are barred by limitations and laches because they waited so long to sue. The first of these contentions was ruled in Fountain v. Starbuck, Mo.Sup., 209 S.W. 900, 901, as follows: "The plaintiffs are prosecuting this suit to secure an adjudication of their title as remaindermen in the 40 acres of land in question contingent upon their survival of their father, the devisee of the land in the will under which they claim. The defendants say that this contingent interest does not carry with it the right to sue for its protection during the lifetime of their father. It is a sufficient answer that the statute under which they are proceeding provides otherwise. It gives its remedy to 'any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder.' Section 2535, Rev.St.1909." Now Sec. 527.150. (See also Moore v. Moore, Mo.Sup.1959, 329 S.W.2d 742.) As to limitations and laches, we pointed out in Rhodus v. Geatley, 347 Mo. 397, 147 S. W.2d 631, 639, that even as to vested remaindermen a statute of limitations cannot run until the end of the particular estate and that "in this connection equity follows the law and ordinarily will not hold a party barred by his laches where the statute of limitations has not run." (See also Revare v. Lee, Mo.Sup., 257 S.W.2d 676, 679, and cases cited.) Certainly that must be the ruling in this case to declare plaintiffs contingent remaindermen, brought while the life tenant is living, and in which the relief sought is removal of a cloud on such contingent interests.

Appellants also contend that, if the 1930 judgments were absolutely void as a matter of law, no action in equity will lie to vacate it as it binds no one, citing Tokash v. Missouri Workmen's Compensation Commission, 346 Mo. 100, 139 S.W.2d 978, 983; Finley v. Farrar, 351 Mo. 26, 171 S.W.2d 593, 596; State ex rel. National Lead Co. v. Smith, Mo.App., 134 S.W.2d 1061, 1069. None of these cases involved title to real estate; but this rule has been applied to cases seeking to remove a void judgment as a cloud on title. 44 Am.Jur. 22, Sec. 26; 74 C.J.S. Quieting Title § 14 f, p. 32; 51 C.J. 165, notes 97–98; Annota-

tion 78 A.L.R. 62–76. One reason for the rule is that equitable relief is considered unnecessary because a judgment void on its face is subject to collateral attack; but 4 Pomeroy's Equity Jurisprudence, 5th Ed., 1030, Sec. 1399, criticising refusal to exercise jurisdiction on the assumption that an instrument or proceeding void on its face is not a cloud on title, states that "from the business point of view every intelligent person knows that the instrument is a serious injury to the plaintiff's title, greatly depreciating its market value"; and that "in some of the states the general rule that no cloud exists where the invalidity of the instrument or proceeding is apparent on its face, or will necessarily appear in a proceeding to enforce it, has been expressly rejected or consistently disregarded." See also 74 C.J.S. Quieting Title § 13, p. 24. As stated in Schwab v. City of St. Louis, 310 Mo. 116, 274 S.W. 1058, 1060, equity may take jurisdiction if the remedy at law is not clear, complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. As noted in 78 A.L.R. 73: "The Missouri courts, although adhering in other respects to the rule that no cloud is created by an instrument or proceeding the invalidity of which appears on its face or will appear in the evidence that must be offered to support it, have held that a cloud exists if the invalidity is such that legal acumen is required to discover it. Merchants' Bank v. Evans (1873) 51 Mo. 335; Verdin v. St. Louis (1895) 131 Mo. 26, 33 S.W. 480, 36 S.W. 52; Hannibal & St. J. R. Co. v. Nortoni (1900) 154 Mo. 142, 55 S.W. 220; Perkins v. Baer (1902) 95 Mo.App. 70, 68 S.W. 939; Jewett v. Boardman (1904) 181 Mo. 647, 81 S.W. 186; McLaughlin v. McLaughlin (1910) 228 Mo. 635, 137 Am.St.Rep. 680, 129 S.W. 21; Center Creek Min. Co. v. Coyne (1912) 164 Mo.App. 492, 147 S.W. 148; Pocoke v. Peterson (1914) 256 Mo. 501, 165 S.W. 1017; Maxwell v. Growney (1919) 279 Mo. 113, 213 S.W. 427; Mahen v. Ruhr (1922) 293 Mo. 500, 240 S.W. 164; Schwab v. St. Louis (1925) 310 Mo. 116, 274 S.W. 1058." See also Hankins v. Smarr, 345 Mo. 973, 137 S.W.2d 499. Certainly, as to the 1930 judgments involved in this case, as stated in Schwab v. City of St. Louis, supra (274 S.W. loc. cit. 1060) it appears that "legal acumen is required to discover their validity or invalidity, as the case may be, even though such matter appears upon the record of the proceedings"; and that "learned counsel for the respective parties to this action appear to be as far apart as the poles in their own respective conclusions upon the question involved." Furthermore, in this case, the 1930 judgments have been recorded in the county in which the land involved is located and appellants have acted on the basis of these judgments to obtain conveyances, which they claim have given them fee simple title, and others may do so if these judgments are not declared void, creating further complications and litigation for those who may ultimately be entitled to the land. Although for the reasons hereinafter stated, our conclusion is that the invalidity of these judgments appears from the face of the record, and we hold this is a proper case for equity jurisdiction to set aside and cancel these judgments for the purpose of removing the cloud cast by these judgments upon the interests of plaintiffs as contingent remaindermen.

Since we base our decision solely on the record of the 1930 cases, it is not necessary to consider the contentions of the parties concerning admission and exclusion of evidence, the grounds urged for setting aside the judgments on the basis of extrinsic fraud, the knowledge of appellants of such fraud at the time of the conveyances to them from the life beneficiary and her husband, and the validity of the appointment of J. B. Hughes as successor trustee. This is not a class action to quiet title, as was Moore v. Moore, supra, but as stated was an action to declare plaintiffs' status and to cancel the 1930 judgments to remove the cloud cast thereby on plaintiffs' contingent interests.

The 1930 cases involved more than mere termination of the trusts because the 1930 judgments attempted not only to terminate the trusts, which were only to continue for the lifetime of Margaret E. Hughes, but also to destroy the contingent remainders, which would vest only on the death of the beneficiary of the trusts. It is our view that the facts stated in the 1930 petition and found in the decree are insufficient as a basis for these 1930 judgments and therefore it affirmatively appears from the record that the court had no authority to enter such judgments and that they are void as a matter of law. The rule is well established that "if the purposes for which a trust is created become impossible of accomplishment * * * the trust will be terminated." A.L.I. Restatement of Trusts, Second, Sec. 335; see also Annotations 92 A.L.R. 157, 97 A.L.R. 325; 54 Am.Jur. 85, Sec. 86; 89 C.J.S. Trusts § 93, p. 927; Scott on Trusts, Sec. 335; 3 Pomeroy's Equity Jurisprudence 950, Sec. 991c. Likewise, "if owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, the court will direct or permit the termination of the trust." Restatement of Trusts, Second, Sec. 336; see also Scott on Trusts, Sec. 336. However, authorized action in this situation is an application of the principle under which the court will direct or permit the trustee to deviate from terms of a trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. See Restatement of Trusts, Second, Sec. 167. Therefore, the proper course would usually be authorization to sell property which requires more expense than the income it produces and continuance of the trust as to the proceeds. See comment b, Sec. 336, Restatement of Trusts, Second. Certainly this is all that could be done where the trust is for the maintenance of a life beneficiary with a contingent remainder to other beneficiaries whose identity cannot presently be determined, because one of the purposes of the settlor is to ultimately vest the remainder in fee in those designated. As stated in Pomeroy's Equity Jurisprudence, Sec. 991c: "A termination will not be decreed where such action will defeat the intention of the settlor and deprive remote beneficiaries of their interests under the trust." See also In re Stack's Will, 217 Wis. 94, 258 N.W. 324, 97 A.L.R. 316; for a proper case for termination for impossibility see Ringo v. Ringo, Ky., 299 S.W. 2d 112, in which no remainder was involved; Likewise Donaldson v. Allen, 182 Mo. 626, 81 S.W. 1151, discussed in Gibson v. Gibson, infra, 280 Mo. loc. cit. 534, 219 S.W. loc. cit. 565.

It is no doubt true that, in the years preceding 1930, the needs of the life beneficiary were greater and the income from the land less than the settlor expected. However, a similar situation was presented in Gibson v. Gibson, 280 Mo. 519, 219 S. W. 561, 565, in which one count in the petition sought to abolish and terminate a trust on the grounds that the predominant idea of the settlor was that his daughter, the life beneficiary, should never be in want and that the trust real estate was unproductive, the income hardly equaling the expense. The life beneficiary had no children, was unmarried and 76 years old. We said: "Such a situation might arise with reference to any trust created by will or otherwise, but the indisputable fact remains that this court has neither the moral right nor the lawful power to substitute its judgment on matters of business for the judgment of testators or others creating trusts." We noted the power of courts of equity "to annul or otherwise terminate trusts under appropriate circumstances, as where the purposes of the trust have been accomplished or their accomplishment has become impossible." However, we held that the purpose of the testator as to the remainder must control, also saying: "But

to abolish this trust would, for all practical purposes, be but an idle ceremony, in any event. Under the undisputed facts in this case, we cannot see how the court, in the event the trust were annulled, could do otherwise than adjudge Miss Gibson to be the owner of a life estate in the lands in question." Likewise, in Dwyer v. St. Louis Union Trust Co., 286 Mo. 481, 228 S.W. 1068, this court held that a trust providing for the income to be paid to the daughter of the testator, the property to go to her children living at the time of her death, could not be terminated during her lifetime, even with the consent of her children, because her children were only contingent remaindermen. See also Evans v. Rankin, 329 Mo. 411, 44 S.W.2d 644; Shaller v. Mississippi Valley Trust Co., 319 Mo. 128, 3 S.W.2d 726; Ewing v. Shannahan, 113 Mo. 188, 20 S.W. 1065.

In the Stack case, supra, the Wisconsin Supreme Court followed Gibson v. Gibson, supra, saying (217 Wis. 94, 258 N.W. loc. cit. 327, 97 A.L.R. loc. cit. 322): "The power exercised by courts of equity to enforce the administration of trusts is a supervisory power. It is exerted to carry out the intention of the settlor. Courts of equity will do all within their power to see that the trust is executed in accordance with its terms. What results from so-called impossibility of performance is ordinarily a deviation from the trust. It does that only when it is imperatively necessary to carry out as far as possible the settlor's intention. A court of equity will not defeat the right of remaindermen to the benefit of the trust. * * * In no event has the court any right under the law to turn either the property or the proceeds of the sale over to the residuary legatees free of the trust." The 1930 judgments attempted to do exactly that, namely, turn over the trust property to the life beneficiary free of the trust; and we hold the court had no authority or power whatever to vest a fee simple title to the trust property in the life beneficiary of the trusts.

Applying these principles to the facts shown on the face of the record in this case, we note that the trust in the Neely 50 acres was created by the will of James M. Douglass. Under former Sec. 468.320, replaced by Sec. 474.470, the interest devised to Margaret E. Hughes vested for her life only; the remainder being in the persons who, on the termination of the life estate, shall be the heirs of the life tenant (Sec. 442.490) who take as purchasers, in fee simple and not by descent. Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672; see also Cook v. Daniels, Mo.Sup., 306 S.W.2d 573; Thomas v. Higginbotham, Mo.Sup., 318 S.W.2d 234. As pointed out in the Brock case (98 S.W.2d loc. cit. 676), these statutes abolished the rule of Shelly's case so that a "remainderman takes the land devised, not by inheritance from anyone but 'as purchaser,' by reason of being the person, who at the death of the life tenant answered the description in the will." This was a continent remainder because, until the life tenant dies, no one can know who would then answer the description in the will. It is further to be noted, as pointed out in the Gibson case (280 Mo. loc. cit. 535, 219 S.W. loc. cit. 566), even if the trust be terminated, all Margaret E. Hughes would have would be a life estate because the trust was only for her lifetime and the will gave her nothing but a life interest. Furthermore, the trustee had the right to sell that interest, but only that interest, with the joinder of Margaret E. Hughes without any decree for termination of the trust. (The will said the trustee "shall have full power with the joinder of the said Margaret E. Hughes to mortgage or sell *the interest of said Margaret E. Hughes in said real estate.*") Therefore, setting aside the trust as to the Neely 50 acres was a futile, idle ceremony; and, in any event, it had no effect whatever on the title to the remainder.

The situation as to the Smith 40 acres is not very different, although broader authority was given to the trustee than in

the trust created by the will. The trust in this land was created by deed and was also for the benefit of Margaret E. Hughes for her life but "at her death to go direct to the heirs of her body." Likewise, under Sec. 442.490, the persons answering the description "heirs of her body" when she dies "shall be entitled to take as purchasers in fee simple"; or if an estate in fee tail is created, Sec. 442.470, abolishing such estates, would ensure that the heirs of the body of the grantee took by purchase rather than by descent. See Trusts and Succession in Missouri—1957—Fratcher, 23 Mo.Law Rev. 467, 470. It is true that the trust in the Smith 40 acres and other adjoining land provided, as the trust in the Neely 50 acres did not, that the trustee could, with the written consent of Margaret E. Hughes, mortgage the land "to such an amount as he may deem necessary for the proper care and support" of such beneficiary. The original trustee did mortgage it under this authority but this mortgage was apparently paid through other financing; and no claim of title to the Smith 40 acres is made under a foreclosure of this or any other mortgage made under such authority. The claim to the Smith land is based on a deed from Margaret E. Hughes and her husband and J. B. Hughes as trustee; but there was no authority in the deed creating the trust for the trustee to sell the land and Margaret E. Hughes had nothing more than a life interest in the land to sell. Therefore, we must hold that even a termination of that trust could not give her the remainder that the settlor of the trust had already given to those who would at her death answer the description of "heirs of her body"; and that this deed had no effect whatever on the title to the remainder.

In an excellent article (6 Mo.Law Rev. 268, 295) Professor Willard L. Eckhardt reaches the conclusion "that contingent remainders are indestructible in Missouri under existing statutes and decisions," saying "no Missouri case has been found which holds a contingent remainder destructible." As further pointed out in this article (see also 6 Mo.Law Rev. 470), we held in Lewis v. Lewis, 345 Mo. 816, 136 S.W.2d 66, 67, that a life tenant (to whom land was devised "for the term of her life, and at her death to the heirs of her body, absolutely") who acquired the reversionary interest, which at common law would have been held a merger destroying the contingent remainders, nevertheless had "a life estate in the real estate described and a vested reversionary interest in fee, which reversionary interest in fee is subject only to being divested in the event of respondent's death, leaving surviving her, heirs of her body." This was a ruling that a contingent remainder cannot be destroyed by common law merger. Under all the authorities, we must and do hold in this case that a court of equity has no power to destroy contingent remainders, by a decree of termination of the trusts involved, upon the facts stated in the 1930 petition and found in the 1930 judgment and decree therein.

The judgments are affirmed.

All concur.

### On Motion for Rehearing or to Transfer to Banc

PER CURIAM.

In view of appellants' contention, in their motion for rehearing or to transfer to the Court en Banc, that the trial court erred in refusing to hear evidence on alleged affirmative defenses, we point out that appellants misconceive the character of these actions and the rulings we have made concerning them. In the first place, these were not actions for possession; and as we noted no such action can be maintained until the life estate ends, so that the matter of allowance for improvements could only be an issue at that time. Moreover, these were not class actions for complete adjudication of title, as was Moore v. Moore, Mo.Sup., 329 S.W.2d 742, but were in

effect for declaratory relief determining that judgments in prior cases were void and did not affect the contingent remainder interests of these plaintiffs in the land involved.

We have held that the judgments purporting to wipe out and destroy the contingent remainders were absolutely void, showing on the face of the record (the facts stated in the pleadings and found in the decree) that the court had no authority, power or jurisdiction to render such judgments because the facts stated conclusively showed that the plaintiffs therein had no cause of action for such judgments and had no right thereto whatever. Therefore these judgments could not bind anyone or protect anyone. This is entirely different from cancellation or rescission for fraud or failure to comply with procedural requirements which would only make a judgment voidable. A judgment void on the face of the record "may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. * * * It has no legal or binding force or efficacy for any purpose or at any place. * * * It may be attacked by a person adversely affected by it, in any proceeding, direct or collateral and at any time. * * * [T]he situation is the same as it would be if there were no judgment." 30A Am.Jur. 198 Sec. 45, also p. 780, Sec. 863; 49 C.J.S. Judgments § 401, p. 794; American Law Institute Restatement of Judgments, Sec. 11; Noyes v. Stewart, 361 Mo. 475, 235 S.W.2d 333; Davison v. Arne, 348 Mo. 790, 155 S.W.2d 155; Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631; Guhman v. Grothe, 346 Mo. 427, 142 S.W.2d 1; Truesdale v. St. Louis Public Service Co., 341 Mo. 402, 107 S.W.2d 778, 112 A.L.R. 135; Gray v. Clement, 296 Mo. 497, 246 S.W. 940; Charles v. White, 214 Mo. 187, 112 S.W. 545, 21 L.R.A.,N.S., 481; Jewett v. Boardman, 181 Mo. 647, 81 S.W. 186. Appellants' motion for rehearing or to transfer to the Court en Banc is overruled.